[No. 13476.   Department One. — March 12, 1890.]

In the Matter of the Estate of CHESTER HIL-
LIARD, Deceased.

Estates of Decedents — Final Account of Executors — Vouchers —
Secondary Evidence not Objected to. — When the evidence of pay-
ments by the executors of the will of a decedent, made for the support
of the minor children, consists of the evidence of one of the executors,
not objected to, who testifies both to the fact of payment and to the
contents of letters acknowledging the receipt of payment, no error appears
in holding that the items of payment thus proven were sufficiently
vouched to justify the charges, in the absence of counter-evidence.

Id. — Delay in Settlement of Estate — Use of Funds by Executors —
Interest. — Executors should be charged with legal interest upon money
of the decedent remaining in their hands, and used by them, or mingled
in their own business, when the settlement of the estate is unjustifiably
delayed for an unreasonable length of time, although no evidence is in-
troduced to show that the executors derived any benefit by the use of
the money.   The law requires executors and guardians not only to ac-
count for all profits realized from the use of the money intrusted to them,
but also for both principal and interest, in case of loss by their unauthor-
ized use of the money.

Appeal from an order of the Superior Court of Ama-
dor County settling and allowing the final account of
executors.

The facts are stated in the opinion of the court.

*E. C. Farnsworth*, and *John F. Ellison*, for Appellant.

*D. B. Spagnoli*, for Respondents.

Vanclief, C. — Chester Hilliard died testate in Ama-
dor County in April, 1879, leaving real and personal
property of the value of about $2,355, which he devised
and bequeathed to his two minor sons, Albert and George
Hilliard.   The will appointed Samuel W. Bright and
Martin Dotta executors, without requiring them to give
bond or security for the performance of their duties, and
authorized them to sell and convey all the property of
the estate and convert it into money without any order
of court, and after paying the lawful debts of his estate,

to invest the residue of the money for the benefit of his said sons. The will also nominated and appointed the same persons — Bright and Dotta — guardians of the persons and estates of his said minor sons, without requiring any bond or security for the performance of their duties as such.

The will was proved, and Bright and Dotta were appointed executors May 12, 1879. Within one year after their appointment the executors sold all the property and paid all the debts of the estate, but appear to have reported to the probate court no account thereof, nor of any of their transactions in regard to the estate until, in obedience to an order of that court, they filed their final account on the fifteenth day of July, 1889, whereby it appeared that they had received in cash from the estate $2,355.43, of which they had disbursed $1,764.85, leaving in their hands $590.58. A portion of the disbursements was for the support and care of the minor sons, among them four items of $150 each, paid respectively November 3, 1879, November 3, 1880, November 16, 1881, January 22, 1883, to Mrs. J. D. Oaks.

On July 29th, after the filing of this final account, A. C. Hilliard, one of said sons, being then over twenty-one years of age, filed in the probate court his written objections to the following items charged in the account: the item of $150 charged as having been paid Mrs. Oaks on November 16, 1881, and to the item of $150 charged as paid Mrs. Oaks January 22, 1883, on the ground that neither of these items had been paid. He further claims that the executors should be charged with interest on all money received by them from May 15, 1880, for the reason that twelve months was a reasonable time within which to settle the estate, and that no reason existed why the estate should not have been settled and distributed within that period.

The issues thus raised were regularly tried, and the court overruled the objections of A. C. Hilliard, and ap-

proved and allowed the final account of the executors in all respects as rendered by them.

From the order approving 'and allowing the final account of the executors, A. C. Hilliard appeals upon a bill of exceptions.

1. As to the two items of $150 each, charged as paid to Mrs. Oaks, the bill of exceptions states that "there were no vouchers produced, and none filed, but satisfactory evidence was introduced before the court, by said executors, showing and proving that all said items were paid by said executors." Immediately following this, the bill of exceptions proceeds: " In further support of said account, S. W. Bright, one of said executors, was sworn, and testified, in substance, as follows, to wit: . . . . There were two minor sons of said deceased, and they remained on the ranch of said deceased about ten months after the death of said deceased. We were appointed the guardians of said minors by the will of deceased. About ten months after the death of said deceased, I took said minors to their aunt, Mrs. D. J. Oaks, in Tehama County, California, according to the request of said Chester Hilliard in his lifetime, and agreed to pay her $150 a year for the support and maintenance of both said minors, and told her I thought I could do so for three or four years. I .paid her $150, in advance, November 3, 1879. On November 3, 1880, I paid her $150. On November 16, 1881, I paid her $150. On January 22, 1883, I paid her $150. I think Mrs. Oaks died just before this last sum was paid, and this last sum was paid to her husband. I received letters every time the money was paid, acknowledging the receipt of the same, but do not know where those letters are now. Some of the money paid to the Oakses I advanced from my own money."

There appears to have been no objection or exception to the testimony of the witness as to the contents of the letters from Oaks acknowledging the receipt of the

money, on the ground that the proof of the loss of those letters was insufficient, nor upon any other ground; therefore it does not appear that the court erred in holding that the items of payment objected to were sufficiently vouched.

The contents of those letters acknowledging the receipt of payment, supplemented by the testimony of the executor that he actually made the payments, constituted sufficient vouchers, in the absence of any counter-evidence, to justify the court in allowing them as proper charges. (*Estate of Rose*, 63 Cal. 349; *In re Moore*, 72 Cal. 344.)

2. It is contended by appellant that the executors should be charged with legal interest, with annual rests, on the money of the estate in their hands, for the reasons that they delayed the settlement of the estate and the distribution of money for an unreasonable length of time, and during that time they had mingled the money with their own and used it in their business.

Mr. Bright, one of the executors, testified that the administration might have been closed within one year from the date of the appointment of the executors; and the only excuses offered for not having closed it within that time are, that their attorney was negligent, and did not proceed with the business as they had requested him to do; that their attorney died six or seven years before the trial of this matter; that until about two years before this trial they supposed the estate was all settled, as they had paid all the debts of the estate contracted by their testator within a year after their appointment, but never inquired into it, and never asked their attorney about it.

As to their use of the money, he testified that they had tried during the first two or three years to loan the money, but could not get the kind of security they wanted; that the money had been kept separate in his safe most of the time, but they had not tried to loan it since January 22, 1883; that whenever he (witness)

needed or wanted the money he used it, but was always ready to pay it over when necessary, but they had never put it out at interest, and that for three or four years he kept the money separate from his own. It is stated in the bill of exceptions that "no evidence was introduced showing that the executors derived any benefit by the use of such money."

It appears by the account rendered that the executors charged themselves with interest on money of the estate; $75 a year for each of the three years, 1880, 1881, and 1882, amounting to $225. Mr. Bright testified that these charges were for interest on deferred payments for real estate sold by the executors. I think the court should have charged the executors with legal interest on all the money for the time it remained in their hands after May 15, 1880, with annual rests. All the money appears to have been received by the executors before May 12, 1880, except $930, purchase-money for real estate, upon which they have charged themselves with interest for three years at $75 a year, ending November 8, 1882. This interest should not be recharged. With this exception the final account rendered by the executors furnishes all the *data* necessary for the computation of the interest by the rule above indicated.

The delay of the settlement and distribution of the estate after May 15, 1880, was unreasonable, and not sufficiently excused by the alleged negligence of the attorney for the executors, as it appears by the testimony of Mr. Bright that he "never inquired into it, and never asked Mr. Porter [his attorney] about it."

Mr. Bright testified that "whenever he needed or wanted the money he used it," though he thinks he kept it in his safe separate from his own money three or four years, but never tried to loan or invest it, as directed by the will, after January, 1883. A fair construction of all this is, that he kept the money to be used by himself whenever he wanted or needed it, and that he so used it.

It makes no difference that there was no evidence "showing that the executors derived any benefit by the use of such money." It is enough that they kept it for their own use, and used it whenever they had use for it. The law requires executors and guardians to account not only for all profits they realize from the use of the money intrusted to them, but also for both principal and interest, in case of loss by their unauthorized use of such money. (*Matter of the Estate of Stott*, 52 Cal. 403; *Estate of Clark*, 53 Cal. 355.)

I think the cause should be remanded, with directions to the lower court to modify the order appealed from, by charging the executors with interest, in accordance with this opinion.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT.— For the reasons given in the foregoing opinion, the cause is remanded, with directions to the court below to modify the order appealed from, by charging the executors with interest in accordance with this opinion.