In re EAKINS' ESTATE. EAKINS et al., Appellants, *v.* EAKINS, Respondent.

(No. 4,798.)

(Submitted June 2, 1922. Decided July 3, 1922.)

[208 Pac. 956.]

*Executors and Administrators—Re-examination of Accounts— Burden of Proof—Family Allowance—Interest.*

Appeal and Error—Questions not Reviewable on Appeal.
1. A question (other than that of jurisdiction) not raised in the trial court will not be considered on appeal.

Executors and Administrators — Family Allowance — Stipulations Between Parties Binding.
2. A stipulation by the parties made at the opening of a hearing on the re-examination of the accounts of an executrix that the court might pass upon all questions of family allowance both as to amount and time for which to be allowed, upon the evidence and all records and files in the case, debarred the unsuccessful party from attacking the order on appeal on the ground that it covered a period of time for which allowance should not have been made.

Same—Closing Estate—Family Allowance—Time.
3. *Held,* in finding that eight and a half years was a reasonable time in which to close an estate valued at $40,000 and granting a family allowance for that length of time, the court did not abuse its discretion where a contest of the will under which the executrix was acting was pending in the court for about three and a half years, where the estate was defendant in a number of other cases, some of which were at the time of the order still pending, and where the parties objecting to the allowance, her stepsons, lived at the home of executrix and participated in the allowance.

Same—Re-examination of Account—Burden of Proof.
4. Where a minor asks to have the accounts of the executrix previously approved reopened, the previous settlement is, under section 10303, Revised Codes of 1921, *prima facie* evidence of the

[64 Mont. 84.]

correctness of the account, and the burden rests upon him to prove that a certain item was erroneously allowed and approved.

Same—Re-examination of Account—Lost Voucher—Presumptions.

5. On re-examination of the accounts of an executrix, the mere fact that a voucher covering an item previously allowed cannot be found is insufficient to overcome the presumption that the court's original action in allowing it was correct.

Same—Interest—When Chargeable to Executrix.

6. An executrix is not chargeable with interest on funds of the estate in her custody unless she has actually received interest or has been guilty of culpable negligence in the discharge of her duties.

Same—Case at Bar.

7. Under the above rule (par. 6) held, that where the testator intended to substitute his wife as beneficiary under a life insurance policy but died before the request reached the insurer, and the amount of the policy was thereafter turned over to her as executrix and she failed to account for it as estate property until ordered by the court to do so, she was chargeable with interest from the date she received it.

Same—Collection of Rents and Debts—Evidence—Insufficiency.

8. Where the record leaves it in doubt whether or not a debt and rent were collected or were collectible by the executrix and it is not clear whether the items were not included in the general returns of rents and moneys charged to her, the court's refusal to charge them was proper.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

IN THE MATTER of the estate of John Eakins, deceased. Petition by James Eakins, individually and as administrator of the estate of Fleming Eakins, deceased, to reopen and re-examine the accounts of Mary A. Eakins, as executrix. From an order resettling the accounts, petitioner appeals. Modified and affirmed.

*Mr. J. O. Davies,* for Appellants, submitted a brief and argued the cause orally.

*Mr. E. D. Elderkin* and *Mr. N. A. Rotering* submitted a brief; *Mr. Rotering* argued the cause orally.

MR. COMMISSIONER LENTZ prepared the opinion for the court.

This appeal is from an order of the district court of Silver Bow county settling and allowing the accounts of

[64 Mont. 84.]

Mary A. Eakins as executrix of the will of John Eakins, deceased. John Eakins died on January 31, 1906, leaving an estate appraised at $36,356, and also life insurance amounting to $3,000 more. Under the provisions of his will the entire estate was devised and bequeathed, one-third each to his two sons, James Eakins and Fleming Eakins, eight and nine years of age, respectively, and to his surviving widow, Mary A. Eakins, stepmother of the two sons, and respondent herein. Respondent, being named as executrix, duly qualified as such, and on November 12, 1906, before the filing of the inventory, was by the court awarded the sum of $250 per month as a family allowance during the progress of the administration. Fleming Eakins received his support and education from respondent and lived at her home until his death at the age of twenty-two, after service in the World War. James Eakins, appellant, received support and education in respondent's home under like circumstances until about fourteen years of age, when he went away and was back only occasionally thereafter and for short periods only.

Respondent rendered and filed accounts and exhibits upon the following dates: December 7, 1906, December 9, 1907, August 27, 1909, June 25, 1912, February 4, 1916, and July 29, 1920. After hearings regularly had, each of the foregoing accounts, except that filed July 29, 1920, was settled without objection from anyone, and in each the estate was charged with the family allowance at the rate of $250 per month, the last account showing a balance due and unpaid to the respondent, executrix, in the sum of $19,806.37. Before any hearing was had on the last account, James Eakins, appellant, having attained the age of twenty-three years, acting in his individual capacity and as administrator of the estate of Fleming Eakins, deceased, filed his petition asking the court to reopen and re-examine all the accounts of the executrix. This petition was granted, and the court, at a later hearing, examined all the accounts, including that of July 29, 1920,

and the objections thereto by the appellant, as an individual, and as administrator of the estate of Fleming Eakins.

The entire matter having been submitted, the court found that the executrix should have charged herself with $2,253.10 rents collected and unaccounted for, also $711.25 paid as commissions to real estate agents for collecting rents, also $3,000 life insurance payable to the estate; that the time reasonably necessary to settle and close the estate was eight and a half years from the time of filing the petition for probate of the will, and that the family allowance should be discontinued from and after August 14, 1914, and ordered the executrix within ten days to file an account showing a balance in favor of the estate on July 28, 1920, of $3,158.23, instead of a deficit of $19,806.37. James Eakins, individually and as administrator of the estate of Fleming Eakins, deceased, appeals from said order.

1. The first attack is on the action of the court in grant-[1] ing a family allowance. Appellant devotes considerable space to a contention that, since the order of allowance was made before the inventory was filed, it became ineffective after that date, citing sections 10144, 10145 and 10146, Revised Codes of 1921, and *In re Bell's Estate,* 142 Cal. 97, 75 Pac. 679. On the other hand, respondent maintains that the first five accounts, all containing family allowances, were regularly heard and approved without any objection, and, no appeal having been taken, the orders approving them became final and cannot now be questioned so far as past payments are concerned, citing *In re Stevens' Estate,* 83 Cal. 322, 17 Am. St. Rep. 252, 23 Pac. 379; *In re Nolan's Estate,* 145 Cal. 559, 79 Pac. 428; *In re Dougherty's Estate,* 34 Mont. 336, 86 Pac. 38. However meritorious either or both of these contentions may be, neither was raised in the lower court. They are raised here for the first time, and for that reason may not be considered.

Besides, at the opening of the trial the respective parties [2] stipulated as follows: "That the court may pass upon

all questions of family allowance upon the merits, upon the evidence which will be introduced at this hearing, and upon all the records and files in the case, that they may be all considered introduced in evidence, and the court may consider them upon that question, and that the court may pass upon the merits of all questions of family allowance both as to the amount which should be allowed and as to the time it should be allowed." If the court needed any additional authority to re-examine and pass upon the entire question of a family allowance, both as to time and amount, it was conferred by this stipulation.

2. Appellant earnestly insists that the court erred in [3] finding that eight and a half years was a reasonable time within which to close the estate and in granting the family allowance for that period. He maintains that the executrix has deliberately delayed closing the estate for the sole purpose of continuing the allowance, that by the exercise of ordinary diligence she could have wound up the affairs of the estate and procured distribution by December 9, 1907, and that no allowance could lawfully be awarded her after that date.

In *In re Dougherty's Estate,* 34 Mont. 336, 86 Pac. 41, Mr. Chief Justice Brantly, speaking for this court said: "But it is urged that it appears that the widow has purposely delayed the settlement of the estate in order that she might consume the whole of it by means of her allowance. This contention presents the question: How long may the allowance continue? May it continue indefinitely? If the estate is insolvent, it continues for one year. (Code Civ. Proc., sec. 2582.) If it is not insolvent, the allowance is made to continue 'during the progress of the settlement of the estate.' (*Id.*) The policy of the law is that the affairs of the estate shall be settled and the assets distributed as speedily as possible. The expression 'during the progress of the settlement of the estate,' then, must be construed to mean during the time reasonably necessary for that purpose. If so, the order,

though regarded as a judgment, fixing a lien upon the assets of the estate must be presumed to have been satisfied when the time shall have arrived at which the estate may be settled; else the administrator may delay action until the whole estate is consumed and nothing be left to those who are entitled to a distributive share in its assets. We do not think the law, though it is exceedingly regardful of widows and children, deprived, as they are, of their natural supporters, contemplates any such absurd result.'' Section 2582 of the Code of Civil Procedure is now section 10146, Revised Codes of 1921.

The record in the case at bar shows that the allowed claims amount to $1,423.55, all of which were paid with reasonable promptitude. A contest of the will was pending about three and a half years before being finally disposed of. The case of *J. R. Silver* v. *Mary A. Eakins,* 55 Mont. 210, 175 Pac. 876, a suit to recover $1,920.80 from the estate, was filed August 12, 1907, tried October 23, 1915, appealed, reversed by this court, and sent back for new trial October 14, 1918, and is still pending. The estate was also defendant in a condemnation suit brought by the Chicago, Milwaukee & St. Paul Railway, filed September 26, 1906, and disposed of April 7, 1909, and was also defendant in a suit for $424.40 by the N. J. McCune estate, filed August 12, 1907, judgment for defendant October 14, 1911, motion for a new trial still pending; and was also defendant in a suit for $325, filed December 24, 1906, by M. D. Kerr, which is still undisposed of on motion for a new trial.

Fleming Eakins lived at the home of the executrix and participated in the family allowance until his death at the age of twenty-two. At the time he enlisted for service in the war he was about to enter the University of California. James Eakins, appellant, lived at home and participated in the allowance for six years or more until he left at the age of fourteen. He testified that he left because of ill treatment. The executrix denied that she mistreated him, and testified

that she raised and educated both boys to the best of her means and ability, and that James left home because of a wayward and wandering disposition. While reaffirming in every particular the opinion of this court in *In re Dougherty's Estate, supra,* we do not find that, in view of the whole record as presented in this case, the trial court abused its discretion in ordering the family allowance to be paid to August 14, 1914. Respondent was under no legal obligation to support and educate her two stepsons from her own funds. If they had received their distributive shares when ten or eleven years of age, a guardian no doubt would have been appointed and the expense of their support charged to the guardianship estate, derived from their distributive shares in the estate of their father.

3. Error is predicated upon the court's refusal to strike from the accounts of the executrix an item for $125 paid to the Butte Electric Supply Company September 20, 1914. No voucher covering this item was discovered, and there is nothing in this record to show for what purpose the expenditure was made. Counsel for respondent made a statement in open court that it was for necessary electrical repairs in one of the properties belonging to the estate, and the matter was allowed to go at that; but, since counsel was not under oath and testifying as a witness, his statement cannot be considered as having any bearing on the case whatever.

Since appellant, James Eakins, and his brother, Fleming, [4, 5] were minors, and therefore under a legal disability during most of the time this estate was in process of administration, it was their right, under the provisions of section 10303, Revised Codes of 1921, upon reaching their majority, to have reopened and re-examined the accounts of the executrix previously allowed and approved. Section 10303 reads as follows: "The settlement of any account and the allowance thereof by the court or judge, or upon appeal, is conclusive against all persons in any way interested in the estate, saving, however, to all persons laboring under any legal disability,

the right to move for cause to reopen and examine the account, or to proceed by action against the executor or administrator, either individually or upon his bond, at any time before final distribution; and in any action brought by any such person, the allowance and settlement of the account is *prima facie* evidence of its correctness: Provided, the court may, upon motion of any party interested, or upon its own motion, within sixty days after the rendition of the decree in cases of inadvertence, or within sixty days after the discovery of the facts constituting the fraud, reopen or set aside any decree of any settlement on the grounds of inadvertence or fraud.''

It will be noted that, under the provisions of section 10303, the previous allowance and settlement of an account is *prima facie* evidence of its correctness, and the presumption will be indulged that at the time of its approval ample evidence was presented to sustain the various items and the court's action in approving them. Therefore, upon re-examination such as this, the burden rests with the appellant to show by competent evidence that the item was erroneously allowed and approved. This the appellant has failed to do. The mere fact that no voucher was found is insufficient to overcome the presumption that the court's original action in approving the item was correct. The presumption will be indulged that a proper voucher was produced, or its absence satisfactorily explained, when respondent's accounts were approved in 1909. (*Campbell's Admr.* v. *White,* 14 W. Va. 122; *McCall* v. *Peachy's Admr.,* 3 Munf. (Va.) 288.)

4. Decedent held a policy of insurance for $3,000 payable [6, 7] after death to his estate. He signed a request substituting respondent as beneficiary, but this did not reach the insurance company until after his death, which was too late, according to the terms of the policy, to make the substitution. The amount of the policy was accordingly paid over to respondent as executrix, but she failed to return and account for this sum as estate funds until required so to do by the court in

the order appealed from. Appellant contends that the court erred in not charging respondent with interest on this $3,000 from the time it was received by her. Respondent insists that, since there is no showing that she ever received any interest or profits from this fund, she cannot be charged with interest. The law does not require an executrix to invest or place at interest the funds of the estate. If she does so, she is not allowed to profit from her use of such funds. She is required to account for such interest or profits as she has actually received. In *In re Davis' Estate,* 35 Mont. 273, 88 Pac. 957, the court said: "5. Finally, it is argued that the administrator should have been charged with interest on the amount of money ordered distributed pending the delay incident to a determination of his appeals to this court after the order of distribution was made. Under our statute, there is no requirement that the administrator must keep the funds in his hands profitably invested. The only provision is section 2798 of the Code of Civil Procedure, where it is provided that the court may order any moneys in the hands of an administrator or executor, upon his own petition or that of an heir or distributee, to be loaned on certain classes of securities. He is not permitted to profit by his trust, however. All accumulations belong to the estate, and he must account for them. If he is chargeable with interest at all, it must be because he has received interest, or because he has been guilty of culpable negligence in the discharge of his duties, so that it is apparent that the distributees have suffered prejudice. Whether or not any of these conditions exist is a question of fact to be determined by the court. An executor or administrator will not, in the discretion of the court, be held unless he is shown to be culpable. On this subject the supreme judicial court of Massachusetts says: 'The general rule is that an executor or administrator (except where he is charged with a special trust, to invest money on interest) is not chargeable with interest unless he has actually received interest, or else where from culpable delay in settling his accounts, it may be

[64 Mont. 84.]

fairly inferred that he has made a profit of the funds in his hands.' (*Lamb* v. *Lamb*, 11 Pick. (Mass.) 370. See, also, *In re Estate of Danforth*, 66 Mo. App. 586; *In re Estate of Gloyd*, 93 Iowa, 303, 61 N. W. 975; *Wheeler* v. *Bolton*, 92 Cal. 159, 28 Pac. 558; 11 Am. & Eng. Ency. of Law, p. 1214.)''

There is no showing that respondent ever received any interest or profit from this fund. Was she guilty of culpable negligence in retaining this $3,000 as her own funds and failing to return it as assets of the estate? We think she was and should be required to account for interest.

Section 7889, Revised Codes of 1921, reads as follows: "A trustee may not use or deal with the trust property for his own benefit, or for any other purpose unconnected with the trust, in any manner.''

Section 7897, Revised Codes, reads as follows: "A trustee who uses or disposes of the trust property contrary to section 7889 may, at the option of the beneficiary, be required to account for all profits so made, or to pay the value of its use, and, if he has disposed thereof, to replace it, with its fruits, or to account for its proceeds, with interest.''

The money was paid to her by the insurance company in her representative capacity as executrix of the estate, and she indorsed the draft as such executrix, and therefore must have been fully conscious that it belonged to the estate. At least, she had attorneys, well paid from the funds of the estate, from whom she could have obtained the information. Notwithstanding, she converted it to her own use and has retained it as her own private funds. The trial court has held that with reasonable diligence she could have closed the estate by August 14, 1914. She should therefore be charged with interest on this $3,000 from the date she received it, to-wit, February 5, 1907. (*In re Allard's Guardianship*, 49 Mont. 219, 141 Pac. 661; *In re Herteman's Estate*, 73 Cal. 545, 15 Pac. 121; *In re Sanderson's Estate*, 74 Cal. 199, 15 Pac. 753; *In re Hilliard's Estate*, 83 Cal. 423, 23 Pac. 393; *Estate of Merrifield*, 66 Cal. 180, 4 Pac. 1176.)

[64 Mont. 84.]

5. In 1914 a Miss Carroll was a tenant in one of the houses [8] belonging to the estate. She fell in arrears, and gave a chattel mortgage to secure the payment of $357.40 back rents. It is urged that the court erred in failing to charge the executrix with the amount of this mortgage. There is nothing in the record to show that this debt was ever collected or could be collected. The executrix was not asked concerning it. Miss Carroll was not called as a witness, and the record is not clear that the item is not included in the general returns of rents collected and charged in respondent's accounts. The court had to act upon the record as presented, and no error was committed.

6. Appellant insists that the court should have charged the executrix with rent on the family residence during the various periods when she and the two boys resided in Los Angeles and at other times when the building was not occupied by her, all prior to the year 1916. Again, the record is vague and indefinite, and it cannot be determined therefrom to a certainty that the executrix has not charged herself with all the rents she ever received from this property. There is no contention that she should be charged with anything more than was actually received. Upon the record presented the court's order was correct as to this phase of the controversy.

We recommend that the order of the lower court be modified so as to charge respondent with interest on $3,000 from February 5, 1907, and that the order as so modified be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the order of the lower court is modified so as to charge respondent with interest on $3,000 from February 5, 1907, and, as so modified, said order is affirmed; each side to pay their own costs.

*Modified and affirmed.*