[Civ. No. 7781.   First Appellate District, Division Two.—March 19, 1931.]

In the Matter of the Estate of EDWIN McCORD SMITH, Deceased.   BANK OF ITALY NATIONAL TRUST AND SAVINGS ASSOCIATION, Executor and Appellant.

Rich & Weis and Emerson W. Read for Appellant.

Morrison, Hohfeld, Foerster, Shuman & Clark, Keyes & Erskine and Charles Josef Carey, *Amici Curiae,* for reversal.

Warren Steel and Homer Lingenfelter, *Amici Curiae,* for affirmance.

SPENCE, J.—This appeal and the appeals in the *Estate of Brenhart* (No. 7782), *post,* p. 766 [297 Pac. 931, and *Estate of Slingsby* (No. 7783), *post,* p. 767 [297 Pac. 931], are presented upon separate records, but upon one set of

briefs, pursuant to an order of consolidation. Each appeal is taken from the order and decree settling the final account of the executor and appellant.

We deem it unnecessary to set forth in detail the facts in each case. The essential facts are the same and the identical question is involved in all three cases. The court found in each case that the executor was transacting its business through three departments, to wit, a commercial department, a savings · department and a trust company department, as provided by law; that upon its appointment as executor and from time to time thereafter, the bank deposited money coming into its hands as such executor in the savings bank department of said bank in the name of the estate and of itself as executor of the estate; that in the final account said executor acknowledged as cash received and charged itself with a certain sum as accrued interest on the funds so deposited, said interest being calculated at the rate of four per cent per annum compounded semi-annually. It further found and concluded that upon the deposit of said funds the bank did thereupon commingle the funds of the estate with its own, used the funds of the estate in carrying on its own business and made a profit thereon and did thereby become liable to said estate for interest at the legal rate, to wit, seven per cent per annum from the time of deposit up to the date of the final account. The court thereupon approved and settled the account in all particulars except that it allowed interest at the rate of seven per cent on said funds and charged the same against the executor in lieu of interest at four per cent compounded semi-annually. There is no evidence to indicate that the executor did not in all other respects perform its duties and .obligations as required by law. So far as the evidence showed it was proper in each case to deposit the funds of the estate in a savings bank and it appeared that the interest accounted for was computed at the usual rate of interest allowed by said bank to its depositors and was a fair and reasonable rate. No findings were made to the contrary and there was neither evidence nor findings to the effect that this was not the usual rate of interest paid to depositors in savings banks. No objections or exceptions to the final account, written or otherwise, were made or taken by any persons interested in the estates. In fact in the *Estate*

*of Smith,* the residuary legatee filed a written approval of the account and requested that it be settled and allowed. In that estate interest was allowed only to the last semi-annual payment date and not up to the filing of the account. This was done with the consent of and by agreement with the residuary legatee, who desired the money to remain in the savings bank department until the next interest date. The trial court in each case apparently applied the general rules applicable to the commingling by an executor of trust funds with funds of his own and ordered and decreed that the executor be charged with interest at the increased rate. (Code Civ. Proc., secs. 1613, 1614; *Miller* v. *Lux,* 100 Cal. 609, 615 [35 Pac. 345, 639]; *Estate of Cousins,* 111 Cal. 441, 446 [44 Pac. 182]; *Wheeler* v. *Bolton,* 92 Cal. 159 [28 Pac. 558]; *Estate of Clark,* 53 Cal. 355; *Estate of William Stott,* 52 Cal. 403; *In re Hilliard,* 83 Cal. 423 [23 Pac. 393]; *Estate of McQueen,* 44 Cal. 584.)

These appeals are directed solely to those portions of the orders and decrees settling the final accounts relating to the interest charged. Appellant concedes that the foregoing authorities correctly apply the law relating to individuals acting as executors, but takes the position that the rule there laid down is inapplicable to the facts before us on these appeals. ■ The only question involved is whether a bank acting as executor and doing a departmental banking business may, in cases where it is proper to deposit the funds of the estate *in a savings bank,* deposit said funds *in its own savings bank department* and pay the usual rate of interest paid to depositors in savings banks. In other words, did the court err in charging the executor with interest at the rate of seven per cent per annum solely for the reason that the money had been deposited in its own savings bank department rather than in some other savings bank? Appellant contends that question should be answered in the affirmative and we are of the opinion that appellant's position must be sustained.

Preliminarily we may state that although we find no cases in this state dealing with the facts here involved, similar questions have been before the courts of other jurisdictions. (*Herzog* v. *Title Guarantee & Trust Co.,* 148 App. Div. 234 [132 N. Y. Supp. 1114]; *In re Demmerle's Will,* 130 Misc. Rep. 684 [225 N. Y. Supp. 190]; *In re People's*

*Trust Co.*, 169 App. Div. 699 [155 N. Y. Supp. 639]; *In re Moore's Estate*, 211 Pa. St. 348 [60 Atl. 991]; *Knagenhjelm* v. *Rhode Island Hospital Trust Co.*, 43 R. I. 559 [114 Atl. 5]; *Hayward* v. *Plant*, 98 Conn. 374 [119 Atl. 341].) In the recent case of *In re Reed's Estate*, 37 Wyo. 107 [55 A. L. R. 941, 259 Pac. 815], involving an individual executor who had commingled the funds of the estate with those of his own, the court said at page 817 of the opinion in 259 Pac.: "It has been held that where a bank or trust company is expressly authorized by law to act as executor, administrator, or trustee, it is not compelled to deposit trust money in another institution, and is not responsible for a higher rate of interest, while the money is in its hands, than paid on other deposits in its own institution. (Citing cases.) But aside from such cases, in which the legislatures of various states have attempted to meet an apparently modern need, and which we need not consider in greater detail, the rule is still inflexible, reiterated again and again by the courts, that a trustee, including an executor, administrator, and guardian, cannot mingle trust money with his own, cannot invest it in his own business, and cannot make a profit from the trust money committed to his care."

Proceeding to a consideration of the legislative enactments of this state we find that prior to 1913 a departmental bank acting as trustee or executor could not deposit trust funds in its savings bank department and the general rule prohibiting a trustee or executor from mingling trust funds with his own was applicable to such departmental banks. (Bank Act, Stats. 1909, chap. 76.) Section 25 provided: "No department shall receive deposits of any other department of the same corporation"; and section 32 provided: "Any bank receiving trust funds in accordance with the provisions of this act relating to trust companies must not mingle such trust funds with the other assets of the corporation." However, in 1913 (Stats. 1913, chap. 104), section 25 was amended to provide an exception as follows: "except that a trust department may make deposits of trust or any other funds under its control with the commercial or savings department of the same corporation"; and section 32 prohibiting the mingling of funds was amended (Stats. 1913, p. 155), by adding the words "except as otherwise provided in section 25 of this act". Again, in 1915 (Stats. 1915,

chap. 608), the exception in section 25 was amended to read "except that a trust department, in proper cases, may make deposits of trust or any other funds under its control with the savings department of the same corporation and may, upon order, previously obtained, of any court having jurisdiction of any trust or fund, make deposits of moneys belonging thereto with the commercial department of the same corporation". Further change in section 25 was made in 1921 (Stats. 1921, chap. 780), when the exception was amended to read: "except that a trust department, in proper cases, may make deposits of trust or any other funds under its control with the savings department or the commercial department of the same corporation".

In our opinion section 25, as amended in 1921, clearly permits the trust department of a bank in proper cases to deposit the funds of an estate for which it is acting as executor, in the savings department of the same bank. A brief reference to the general powers, duties and obligations of executors and administrators clarifies the meaning of the words "in proper cases" as used in that section. An executor serves in a fiduciary capacity and his powers, duties and obligations are in many respects the same as those of a trustee. (Code Civ. Proc., secs. 1613, 1614; 11 Cal. Jur. 211 and 981 et seq.) However, unlike a trustee whose duty it is to invest all trust funds as soon as possible (Civ. Code, sec. 2261), the primary duty of an executor is simply to preserve the estate until distribution. (11 Cal. Jur. 1021.) He is placed under no statutory obligation to invest money belonging to the estate, but investment in securities of the United States or of this state is permitted under prior order of court upon good cause shown therefor. (Code Civ. Proc., sec. 1592.) Ordinarily there is no investment in the ordinary sense of that term of the funds coming into the hands of an executor, but it is customary and proper for him to deposit those funds in either a commercial or savings department of a responsible bank. (11 Cal. Jur. 1023.) His authority to so deposit funds of the estate arises from his obligation to safeguard and protect the funds and not from any obligation to invest them. ■ Where funds are to be in his hands for a very short time or where practically all of the funds will be required for the immediate needs of administration, deposit in a commercial account subject to

check is proper. On the other hand, in cases where there is a substantial sum in excess of the immediate requirements, which sum is to be held over a period which will permit the accrual of interest on a savings bank deposit, he should be required to safeguard and protect these funds in a manner most advantageous to the estate and to that end it is proper that he should deposit the funds in a savings account rather than in a noninterest bearing commercial account.

From what has been said we believe that the meaning of the phrase "in proper cases" is apparent. The time within which the estate may be distributed, the time of the receipt of the funds and the immediate need for funds in order to meet the requirements of administration, are all factors in determining whether it is proper for the executor of a particular estate to deposit the funds in a commercial account or a savings account. In the estates here involved we must assume from the evidence and findings that each presented a proper case for the deposit of funds in a savings account. No contention to the contrary is made in the argument for affirmance. We, therefore, conclude that under section 25 of the act the action of the bank in depositing the funds of these estates in its own savings bank department was expressly authorized.

■ Counsel appearing as *amici curiae* for affirmance argue that even assuming that deposit in the savings bank department in the same bank is permitted by section 25, it must be construed to permit a special deposit without mingling or use of the funds and not a general deposit. We cannot follow counsel's reasoning. Such construction would render meaningless the amendment to section 32 above set forth whereby the mingling of trust funds with other assets is permitted as provided in section 25. A special deposit is a mere bailment for safekeeping in which the title remains in the depositor and the bank cannot mingle such deposit with other funds. (4 Cal. Jur. 189.) It is obvious that no interest would accrue on special deposits, as the bank cannot put them to use. Unless the amendments to section 25 and section 32 are construed to refer to a general deposit permitting the mingling and use of the funds in the same manner as other general deposits, interest would not accrue to the benefit of the estate and the deposit of

the estate funds in the savings bank department would serve no purpose whatsoever.

█ Counsel further contend that if section 25 is construed to permit not only deposit but also mingling and use, it would be unconstitutional, being class legislation and creating a discriminatory preference in favor of departmental bank trustees and against all other trustees. We find no merit in this contention. It is conceded that this classification would be valid if based upon some natural and intrinsic difference between departmental banks as trustees and others acting in the same capacity. It has been heretofore decided that where legislation affects banking corporations doing business as testamentary trustees as a class and such classification is not unreasonable, there is no valid constitutional objection to such legislation. (*Estate of Barnett*, 97 Cal. App. 138 [275 Pac. 453].) We find nothing unreasonable in such classification here and in our opinion there is a natural and intrinsic difference between departmental bank trustees and other trustees. The various sections of the Bank Act relating to capital, surplus, reserves, securities, inspection and the like (Bank Act, secs. 90, 96, 97, 98, 101, 103, 105, 106), surround every activity of departmental bank trustees with safeguards not required of trustees generally.

In arguing for affirmance counsel dwell at some length upon the policy involved in permitting departmental banks to deposit trust funds in their savings bank departments to be used in the same manner as other deposits. We deem it unnecessary to discuss the policy involved for it is upon this question of policy that the legislature has spoken and it acted within its province in so doing.

For the foregoing reasons we are of the opinion that the final account of the executor in each of these estates should have been settled and allowed as filed and that the trial court erred in charging the executor with interest at the rate of seven per cent instead of four per cent compounded semi-annually as set forth in the account. As no other exception is taken to the orders and decrees, there is no necessity for reversing these orders and decrees, but directions to the trial court to correct them will suffice (*Estate of Machado*, 186 Cal. 246 [199 Pac. 505]; *Estate of Adams*, 131 Cal. 415 [63 Pac. 838]), and under the circumstances

we believe it proper that the parties should bear their own costs.

In the *Matter of the Estate of Edward McCord Smith* (No. 7781), the trial court is directed to correct the order and decree in accordance with the views herein expressed by charging the executor with interest in the sum of $706.13 as set forth in the final account and no more, and as so corrected and modified said order and decree are and each of them is affirmed without costs.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 18, 1931, and a petition by *amici curiae* to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 18, 1931.