## BREEDLOVE v. FREUDENSTEIN.
### No. 8160.

Circuit Court of Appeals, Fifth Circuit.
April 6, 1937.

SIBLEY, Circuit Judge, dissenting.

F. W. Seabury and E. W. Seabury, both of Brownsville, Tex., and James Q. Louthan, of San Benito, Tex., for appellant.

F. T. Graham, of Brownsville, Tex., for appellee.

Before FOSTER and SIBLEY, Circuit Judges, and STRUM, District Judge.

FOSTER, Circuit Judge.

Appellee brought this suit as receiver of the Merchants National Bank of Brownsville, Tex., to recover on six promissory notes, executed by its trust officer, representing the trust department of the bank as executor of the will of F. N. Booth. A plea in abatement and exceptions or demurrers were overruled. The jury was waived and, after the taking of evidence, judgment was entered by the District Court as prayed for, a total amount of $15,647.88, which included interest and attorney's fees as provided for in the notes. The assignments relied upon present only this proposition: That the bank was not authorized to contract as executor with itself and the notes were void for want of two contracting parties.

The following facts appear from the pleadings: F. N. Booth died, leaving a will appointing the Merchants National Bank as executor and vesting it with full powers to pay the debts of the estate and sell property, if necessary for that purpose, provide for the education of his children, and generally to do any act that he might have done during his lifetime. The bank was appointed and qualified as independent executor by the probate court of Cameron county in April, 1930, and filed an inventory which showed debts of about $14,000 requiring immediate payment and only about $3,000 in cash. For the purpose of administering the estate, from time to time the trust department of the bank borrowed from the commercial department on notes executed by it as independent executor of the estate of Booth, the notes being signed by its trust officer. The bank closed for business on March 24, 1932, and John M. Young was appointed receiver by the Comptroller. He filed a formal resignation of the bank as independent executor, made an accounting, and the bank was discharged. After the resignation of the bank, appellant was appointed administrator de bonis non with the will annexed in place of the bank. The six notes sued on were renewals of other notes previously given and came into the hands of the receiver as assets of the bank when it closed. Subsequently, appellee became receiver of the bank. Appellant promised to pay the notes, but did not do so, and finally formally disallowed them February 27, 1936. Thereafter this suit was brought as the notes were about to be barred by limitation.

It is conceded by appellant that the bank as administrator would be entitled to recover for advances made to the estate in a suit in equity. It is not suggested that the bank was without authority to borrow money for the benefit of the estate, was guilty of fraud, or that there was want of consideration. The sole issue presented is whether the notes were valid contracts.

The bank was granted a special permit to do a general trust business and to act as executor or administrator of the estates of deceased persons, under the provisions of the federal statute. 12 U.S.C.A. § 248 (k). The Texas statute, article 396, subd. 10, Rev.Stat. of Texas 1925, grants similar authority to the banks of the state. There are no federal or Texas decisions on the precise point here presented nor does there appear to be any such decisions by other courts. It is plain that Congress intended to grant authority to national banks to do a trust business in competition with state banks. The authority to act as administrator of the estate of a deceased person would be of little value if the right of the bank to deal with the estate as an entity were barred, as this would seriously interfere with its general banking business. The District Court reached the conclusion that the bank, acting as executor, through its trust department, was a separate entity from the bank in doing its general banking business. We agree with that conclusion. The bank was acting as administrator under the authority of the probate court, and its acts in that respect were by authority of, and subject to, the approval of that court. It was not a free agent to do as it pleased and was not lending money to itself in the transactions involved. It was lending money to the estate of Booth. We consider it was as much authorized to do so when it was it-

self acting as administrator as it would have been had the estate been represented by an individual entirely separate and unconnected with the bank.

The record presents no reversible error.

Affirmed.

SIBLEY, Circuit Judge (dissenting).

That the trust department of the national bank was a separate entity from the commercial department, so that the bank as executor could bindingly contract with itself as banker to the advantage of the bank as against its trust, is not, I think, a sound proposition. That part of the Federal Banking Laws, 12 U.S.C.A. § 248(k), which authorizes the Federal Reserve Board "to grant by special permit to national banks applying therefor * * * the right to act as trustee, executor, administrator * * * or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located," does not authorize the Board to create any new entity, but only to give the bank another right. The bank continues to have the same stockholders, who are represented by the same directors. If a trust officer is chosen, he is a creature of the directors, responsible to them as the cashier or any other agent of the bank is. The provisions of the law about segregating the assets held by the bank in a fiduciary capacity are only a recognition that those assets do not belong to the bank and ought not to be commingled with the bank's own assets, just as an individual who is a trustee ought not to mingle the funds of his trust with his own funds. The bank can use trust funds in its hands only by putting in their place United States bonds or other securities approved, not by the bank, but by the Federal Reserve Board. Separate books are kept, but only as a convenience in keeping up with this peculiar business of the bank, and to facilitate the state authorities in examining into this business without examining the commercial banking books. It is provided specially that, if the bank should fail, the owners of the fiduciary funds may claim them, and shall have a lien on bonds or other securities set apart for them "in addition to their claim against the estate of the bank." That is to say, any shortage in the trust accounts is a claim against the general assets of the bank like that of any other creditor of the bank. The law does not create any separate entity inside the bank, but merely allows the bank to successfully compete by doing what state banks are allowed to do. It is probable that Congress has no authority to create a separate entity to act as trustee or executor in the states. That no such thing was done I understand to be the basis of the decision in First National Bank of Bay City v. Fellows ex rel. Union Trust Co., 244 U. S. 416, 37 S.Ct. 734, 61 L.Ed. 1233, L.R.A. 1918C, 283, Ann.Cas.1918D, 1169, upholding this new function of a national bank.

There being but one bank, one set of interested stockholders, represented by one board of directors who control all the agents and officers of the bank, it is clear that the bank as executor cannot contract with nor be sued by itself as bank, any more than an individual executor having agents could sue or contract with himself. Every principle of trust relationships is against it. The executor of Booth's estate was not the trust officer but the bank itself. If any money was to be made or lost by reason of the trust, the bank, not he, made or lost it. In borrowing from itself money for the use of the estate, giving negotiable notes for it, and promising to pay the highest conventional rate of interest, 10 per cent., to be compounded by renewal in three months, and promising to pay 10 per cent. attorney's fees in case of default in payment and placing the note in the hands of an attorney, "or if collected through the Probate Court," this executor did a thing on its face wrong, even if legally possible. If this be a valid contract, the executor, instead of advancing money as an executor may do when money is needed, bringing the advances into his accounts in the probate court and asking the legal rate of interest, which in Texas is 6 per cent., has so fixed matters that it can make 10 per cent. interest quarterly compounded and then by not paying itself can add 10 per cent. attorney's fees even if no more is done than to bring the debt before the probate court for allowance. The law does not sustain transactions which thus oppose interest to fiduciary duty. These notes as between the parties and their privies are only memoranda of transactions. Probably no limitation runs so long as the trust continues, for the very reason that an executor cannot sue himself. Glover v. Patten, 165 U. S. 394, at page 405, 17 S.Ct. 411, 41 L.Ed.

760. But in any case the promises by the trustee to pay himself an exaggerated interest and attorney's fees on an unfair basis are not enforceable at all. Inquiry into these advances ought to be made only in connection with the general settlement of the executor's business which was pending in the District Court through removal from the probate court. It may turn out that the bank as executor owes the trust, in which case this judgment for 10 per cent. interest and attorney's fees would be fantastic. The judgment which is affirmed is not consistent with the theory of separate entities on which it was rendered, for it is made subject to set-off by any judgment rendered against the bank in the general settlement, thus conceding that the commercial department which is suing here is the same as the trust department which is defending there. The set-off, however, would not cure the injustice of the interest and attorney's fees adjudicated here. The suit ought to have been dismissed.