HUMANE SOCIETY OF AUSTIN AND
TRAVIS COUNTY, Appellant,

v.

AUSTIN NATIONAL BANK, Executor of
Estate of Mary M. Gutsch, De-
ceased, Appellee.

No. 7640.

Court of Civil Appeals of Texas,
Beaumont.

Nov. 27, 1974.

Rehearing Denied Dec. 19, 1974.

Jack F. Cook, Jr., Austin, for appellant.

James P. Hart, Austin, for appellee.

STEPHENSON, Justice.

This is an appeal from an order of the Probate Court allowing certain claims by the Executor of the Estate of Mary Mayfield Gutsch, deceased. Such claims included $40,000 for the Bank's commissions, and attorneys' fees and expenses incurred in the appellate procedure of the will contest. The parties will be referred to here as the Bank and the Humane Society.

Mrs. Gutsch died in October, 1971, leaving a holographic will naming the Bank as Executor and making several specific bequests with the remainder to the Humane Society. Such will was admitted to probate and letters testamentary granted to the Bank, November 1, 1971. The claims complained of here were protested by the Humane Society and a hearing set. No jury was demanded and the order allowing the claims was entered May 3, 1974.

The primary thrust of the Humane Society's points of error is that the Probate Court erred in disallowing offsets to the Executor's claim for a commission in excess of $11,000 because of negligence and self-dealing on the part of this Bank and because the expenses and attorneys' fees incurred in the appellate procedure of the will contest were of no benefit to the Gutsch Estate. These points are overruled.

The inventory, appraisement and list of claims filed showed this estate to be valued in excess of $1,600,000. The primary legatees were: A godchild who received the furniture, jewelry, and cash. The City of Austin received the home place for a park. The remainder to the Humane Society, which amounted to about two-thirds of the estate.

The argument made by the Humane Society as to the commissions allowed the Bank in the amount of $40,000 does not seriously maintain the amount in itself is too high, but only that the offsets should have been allowed. Section (a) of art. 241 of the Tex.Prob.Code Ann., V.A.T.S., provides for compensation of Executors and Administrators in the amount of five percent of all cash received and paid out. The record before us shows the sale of bank and other stock pursuant to a joint application filed by the parties to this appeal was in itself of sufficient amount to warrant the court to set the commission in an amount higher than that actually allowed. So, we proceed to consider the offsets claimed.

Humane Society's first complaint is that the Bank was guilty of self-dealing, resulting in a loss of income. Our record shows that an application to sell certain shares of bank and other stock was made by the Bank as executor and joined by the Humane Society on September 11, 1972. On the 15th of September, 1972, the Probate Court entered an order authorizing such sale and the investment of the proceeds as follows:

"[T]o purchase with the proceeds of such sale, certificates of deposit in banks and savings and loan institutions; day-in, day-out savings accounts; commercial paper in prime-rated corporations; U.S. Treasury bills, bonds or notes due within two years; and U. S. agency securities due within two years."

Then following the sale, September 20, 1972, the Bank invested $550,000 of the Estate's funds in its own one year certificate of deposit at six percent interest. Then November 16, 1972, the Bank invested an additional $333,000 of the Estate's fund in its own six months' certificate of deposit at 5¾ percent interest. There certificates in the total amount of $883,000 were renewed by the Bank from time to time covering a sixteen months' period. Humane Society offered evidence to show that those funds could have been invested in certificates of another Austin Bank for the same time and earned an additional $2,275.

The essence of Humane Society's argument is that the Bank had no authority to invest in its own bank in the first place, and then it should have shopped around and secured the highest interest rate available.

The evidence shows their certificates of deposit were one hundred percent secured, and there is no evidence that the certificates which could have been obtained from another Austin bank were so secured. The order authorizing the sale of the stock and investment of the money specifically mentioned certificates of deposit of banks. Nothing in the order prevented the purchase of this Bank's certificate.

Mrs. Gutsch's will, which is entirely in her own handwriting, states: "I want the Austin National Bank to administer my estate." Certain special bequests are then made, followed by these provisions: "All of the income from the remainder of my estate shall go to the Humane Society . . . ." Also, "The home & acreage is left to the City of Austin as a park to be used for no other purpose—not to be used by any other organization—otherwise it shall be given to the Austin Travis County Humane Society." Also "Ann Hoey has choice of any or all furniture; also all silver—or any other household wares—"

It is apparent that questions would arise as to the construction which should be placed upon several provisions in that will. The Bank filed suit, under the Uniform Declaratory Judgments Act in Travis County, making all legatees a party in addition to the State Attorney General. The trial court entered a judgment, holding among other things that the will created a perpetual charitable trust with only the income from the remainder of the estate to go to the Humane Society, with the Bank as testamentary trustee. An appeal was taken by the Humane Society to the Austin Court of Civil Appeals. In an opinion dated November 1, 1972, that court affirmed all of the judgment of the trial court. (488 S.W.2d 586)

The Supreme Court of Texas granted a writ of error, and in an opinion dated December 12, 1973, affirmed in part and reversed in part that portion of the judgment holding the will created a perpetual charitable trust. (503 S.W.2d 759) Rehearing was denied January 16, 1974. Then, in February, 1974, the Bank made applications to partially disburse the assets of the estate, withholding enough funds on hand to cover the claims which had been allowed but were involved in this appeal

We have little or no guidelines to follow in this state, as the Probate Code does not specifically cover the situation before us, and we have found no cases directly in point. Tex.Prob.Code Ann. § 230(a) (1956) reads in part as follows:

"The executor or administrator shall take care of the property of the estate of his testator . . . as a prudent man would take [care] of his own property . . . ."

Section 234 (Supp.1974–1975) reads in part as follows:

"*Powers To Be Exercised Under Order of the Court.* The personal representative of the estate of any person may, upon application and order authorizing same, renew or extend any obligation owing by or to such estate. When a personal representative deems it for the interest of the estate, he may, upon written application to the court, and by order granting authority:

"(1) Purchase or exchange property;"

Inasmuch as both the Bank and the Humane Society joined in the application made to the Probate Court for the order authorizing the Bank to sell the stock and invest in certificates of deposit, among other things, no question is raised as to the authority of the Bank to complete such a transaction. As stated above, the only question is whether the Bank was guilty of self-dealing in buying its own certificate,

resulting in a loss of income. Even though the record shows the loss of some income because the money was not invested in another bank's certificates, we do not find the Bank did not handle this money as an ordinary prudent investor would have handled his own funds. As all of the testimony shows, an investor must consider the safety of an investment along with the amount of return, and one would expect to receive less income from a fully secured investment. The fact that the Bank as executor earned $2,275 less income over a sixteen months' period on an investment of $883,000 does not in itself prove negligence as a matter of law. That portion of the offset was properly denied.

Other parts of the offset claimed by the Humane Society included the cost of taking care of the home which was given to the City of Austin and the storage fee for the furniture given to the godchild. As set out above, under Section 230(a), the Bank was obligated to take care of the assets of this estate as a prudent man would take care of his own property. Until the suit asking for the construction of this will had been finally disposed of, the Bank had that responsibility. There is no indication the amounts paid were excessive. All of the claims here contested were approved by the Probate Court for payment, and no appeal was taken from any of those orders. An attempt to offset such amount of money paid by the Bank on such claims, is a collateral attack upon the Probate Court's orders approving the same. This is an additional reason why the Probate Court acted properly in denying such offsets.

The Humane Society's last complaint is that $8,000 of the attorneys' fee approved was for representation of the Estate in the appellate courts. It is argued that such legal representation was for the benefit of the Bank and not the Estate. The Probate Court did not err in allowing such claim.

The will in question, being written by a layman, left serious doubt as to its true meaning. The most serious question being whether a trust had been created. Both the District Court and the Austin Court of Civil Appeals construed the words "all of the income from the remainder of my estate to the Humane Society" to mean a perpetual testamentary trust had been created. It was not until January, 1974, that the Supreme Court of Texas finally settled that question. Other serious questions arose as to the bequests to the City of Austin and the godchild, which were also determined finally in the Supreme Court decision. The Humane Society appealed this case to the Austin Court of Civil Appeals, and then made application for a writ of error in the Supreme Court of Texas. The question as to whether the appellate attorneys' fees should be paid is determined by whether the Bank acted in good faith in the employment of such attorneys for such purpose. The final outcome of the case is not the determining factor. See Rowe v. Dyess, 213 S.W. 234 at 236 (Tex.Comm'n App.1919, jdgmt. adopted). The Probate Court properly denied all of the offsets claimed by the Humane Society.

Affirmed.