HUMANE SOCIETY OF AUSTIN AND
TRAVIS COUNTY, Petitioner,

v.

The AUSTIN NATIONAL BANK, Execu-
tor of the Estate of Mary Mayfield
Gutsch, Deceased et al., Respondent.

No. B–5044.

Supreme Court of Texas.

Dec. 10, 1975.

Rehearing Denied Jan. 7, 1976.

Davenport & Davenport, Jack F. Cook, Jr. and John Davenport, Austin, for petitioner.

Hart, Keahey & Hart, James P. Hart and James H. Keahey, Austin, for respondent.

DOUGHTY, Justice.

This is a case in which petitioner, the Humane Society of Austin and Travis County, is challenging commissions and attorneys' fees claimed by Austin National Bank as dependent executor of the estate of Mary Mayfield Gutsch, deceased. The probate court allowed the claims as submitted and disallowed all offsets claimed by the Humane Society, and the Court of Civil Appeals affirmed. Tex.Civ.App., 517 S.W.2d 323.

By its first three points of error the Humane Society contends that the Bank was guilty of self-dealing in investing the estate's funds in its own certificates of deposit pending distribution of those funds. In points four and five the Humane Society contends that the Bank incurred unnecessary expenses for maintenance and storage of property in the estate. In point six the Humane Society contends that the Bank is not entitled to claim attorneys' fees incurred in a prior suit seeking a construction of decedent's will because the work performed by the attorneys was of no benefit to the estate. We overrule all points of error and affirm the judgment of the Court of Civil Appeals.

Mary Mayfield Gutsch died on October 19, 1971, in Travis County, Texas, leaving a holographic will in which Austin National Bank was named executor. The will was probated in Travis County on November 1, 1971, and the Bank qualified as dependent executor. The Bank instituted suit seeking a declaratory judgment to determine the rights of the named beneficiaries under the will. The outcome of that suit was finally determined by this Court in our decision of December 13, 1973, *City of Austin v. Austin National Bank*, Tex., 503 S.W.2d 759. As it was finally construed, the will devised to a godchild all tangible personal property found in Mrs. Gutsch's house at her death; the house and the land upon which it was located was devised to the City of Austin to be used as a public park; and the remainder of the estate (approximately two-thirds) was devised to the Humane Society in fee.

On September 11, 1972, the Bank made an application to the probate court, joined by the Humane Society, to sell certain bank and other stock of the estate and re-invest the funds in other securities yielding a better return, pending the outcome of the will construction suit. On September 15, 1972, the probate court entered an order authorizing such sale and listing the types of securities in which the Bank could re-invest the proceeds, including certificates of de-

posit in banks and savings and loan institutions. Pursuant to this order the Bank sold the estate's stock and, in September and November of 1972, purchased certificates of deposit from its own commercial department with the proceeds. These certificates, in the total amount of $883,000.00, were renewed from time to time over the succeeding sixteen months.

The Humane Society contends that under the common law of trusts and the provisions of the Texas Trust Act, the Texas Banking Code, and the regulations of the Federal Comptroller of Currency, the Bank was absolutely prohibited from investing funds of the estate with itself. For this alleged breach of the Bank's fiduciary duty the Humane Society seeks to deny the bank its commission as executor and to recover any profits made by the bank from use of the money invested in the certificates of deposit.

■ First, it is clear that the Texas Trust Act, Tex.Rev.Civ.Stat.Ann. articles 7425b–1 through 7425b–47, is not applicable here. Article 7425b–2 states that a "trust" for purposes of the Act "means an express trust only, . . ." In *City of Austin v. Austin National Bank, supra*, we held that Mrs. Gutsch's will did not create a perpetual charitable trust, but vested the residuary estate in the Humane Society in fee. Even though the estate's funds were held by the Bank in a fiduciary capacity for the benefit of the Humane Society as beneficiary of the estate, the duties of the Bank arose by reason of its position as executor of the estate, not as trustee of any express trust created by the will. An express devise of property to another as trustee for named beneficiaries is required for creation of an express trust. *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256 (1951). Moreover, the trustee of an express trust is given authority, absent limiting provisions in the instrument creating the trust, to exchange and invest property of the trust, article 7425b–25; a dependent executor of an estate has no such power absent an authorization from the probate court or an express grant of

authority from testator. Tex.Prob.Code Ann. § 234 (Supp.1974).

■ Even though the Texas Trust Act is not applicable, the executor of an estate is held to the same fiduciary standards in his administration of the estate as a trustee. Section 37 of the Probate Code provides, in part, that the executor "shall recover possession of and hold such estate in trust to be disposed of in accordance with law." As trustee of the property of the estate, the executor is subject to the high fiduciary standards applicable to all trustees. In *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377 (1945), this Court quoted with approval the following excerpt from *Magruder v. Drury*, 235 U.S. 106, 35 S.Ct. 77, 59 L.Ed. 151 (1914), 235 U.S. at page 119, 35 S.Ct. at page 82:

> It is a well-settled rule that a trustee can make no profit out of his trust. The rule in such cases springs from his duty to protect the interests of the estate, and not to permit his personal interest to in any wise conflict with his duty in that respect. The intention is to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owing in a fiduciary capacity.

By purchasing its own certificates of deposit with funds of the Gutsch estate which it held in trust as executor, the Bank in effect borrowed the funds for its own use. Austin National Bank contends that it was expressly authorized to invest the estate's funds in its own certificates of deposit by the provisions of 12 U.S.C.A. § 92a (Supp. 1975), and Tex.Rev.Civ.Stat.Ann. art. 342–604 (1973). 12 U.S.C.A. § 92a provides that the Comptroller of the Currency shall be authorized to grant to national banks the power to act as executor of estates to the same extent that state banks are permitted such power. The statute requires national banks to segregate all assets held in a fiduciary capacity, and provides that

> . . . funds deposited or held in trust by the bank awaiting investment shall be

carried in a separate account and shall not be used by the bank in the conduct of its business unless it shall first set aside in the trust department United States bonds or other securities approved by the Comptroller of the Currency.

12 U.S.C.A. § 92a(d).

■ The Comptroller of the Currency has issued regulations pursuant to section 92a granting to national banks power to act as executor coextensive with the authority of state banks. 12 C.F.R. Chapter I, Part 9. Thus federal law allows a national bank to deposit trust funds with itself when such funds are "awaiting investment," provided that (1) it sets aside in its trust department approved securities equal in face value to the amount of the fund, and (2) local law authorizes such a deposit.

■ Article 342–604 of the Texas Banking Code provides:

Unless the trust instrument provides otherwise, funds received in trust by a state bank awaiting investment shall be carried in a separate account and shall not be used by the bank in the conduct of its business, unless it shall first set aside in the trust department United States government bonds or other securities eligible under the laws of this State for the investment of funds by guardians or trustees of a market value equivalent to the amount so used. . . .

"[F]unds received in trust" within the meaning of this statute includes funds received by a bank as executor. Under these state and federal statutes, a bank may temporarily deposit with itself funds of an estate "awaiting investment" provided it sets aside adequate security. It is undisputed that Austin National Bank complied with the security requirement by setting aside in its trust department qualified securities equal in value to the certificates of deposit. The question to be decided, therefore, is whether the funds used to purchase the certificates of deposit were "awaiting investment" within the meaning of Article 342–604 and the corresponding federal law.

The Comptroller of the Currency has issued the following regulation, at 12 C.F.R. § 9.10, pursuant to 12 U.S.C.A. § 92a:

§ 9.10. Funds Awaiting Investment or Distribution

(a) Funds held in a fiduciary capacity by a national bank awaiting investment or distribution shall not be held uninvested or undistributed any longer than is reasonable for the proper management of the account.

(b) Funds held in trust by a national bank, including managing agency accounts, awaiting investment or distribution may, unless prohibited by the instrument creating the trust or by local law, be deposited in the commercial or savings or other department of the bank: Provided, that it shall first set aside under control of the trust department as collateral security:

(1) Direct obligations of the United States, or other obligations fully guaranteed by the United States as to principal and interest; or

(2) Readily marketable securities of the classes in which state banks exercising fiduciary powers are authorized or permitted to invest trust funds under the laws of the state in which such national bank is located; or

(3) Other readily marketable securities that qualify as investment securities pursuant to the Investment Securities Regulation of the Comptroller of the Currency, 12 C.F.R., Chapter I, Part 1. The securities so deposited or securities substituted therefor as collateral shall at all times be at least equal in face value to the amount of trust funds so deposited, but such security shall not be required to the extent that the funds so deposited are insured by the Federal Deposit Insurance Corporation. The requirements of this section are met when qualifying assets of the bank are pledged to secure a deposit in compliance with local law, and no duplicate pledge shall be required in such case.

It is apparent from this regulation that the Comptroller has interpreted the term "awaiting investment" in § 92a to mean "awaiting investment or distribution." The Comptroller's broad interpretation of § 92a comports with the interpretation of Article 342–604 urged by the Bank in this case.

In *American Legion Post No. 90 of Village of Mamaroneck v. First National Bank and Trust Co. of Mamaroneck*, 113 F.2d 868 (2nd Cir. 1940), the Court construed the term "awaiting investment" in the statute from which § 92a was derived, 12 U.S.C.A. § 248(k). In that case some investors had placed proceeds from the sale of land with the bank pending their distribution to the investors. Because of litigation concerning the proper allocation of taxes arising from the sale, the proceeds remained in the bank's trust department for several years, during which time the bank paid three percent interest on the funds. The bank had set aside securities to secure the trust fund as required by § 248(k) and the corresponding regulations. When the bank became insolvent the investors attempted to claim their lien on the securities so set aside, and the general creditors of the bank challenged the lien, contending that the funds were not "awaiting investment" within the meaning of § 248(k). The Court agreed with the investors, stating, at page 872:

> Perhaps more serious is the further claim that these were not funds held in trust "awaiting investment" and hence without the statute. We think, however, that this is too narrow a construction of the statute, and really defeats its intent. If trust funds held for investment are subject to the statute, but trust funds held for distribution are only general assets of the bank, then we find a serious difference in result following from a very slight, even formalistic, change in the relations of the parties. It would be no great stretch to term this a fund held "for investment," particularly since the desire of the subscribers for some increment on their funds was made so clear.
>
> . . .

Moreover, a broader interpretation should be given to the statute. We think that the provisions for security include in general the fiduciary funds which the bank is required to keep segregated from its general assets.

 We agree with the construction placed upon § 92a by the Court of Appeals for the Second Circuit and by the Comptroller, and we believe that the same interpretation should be placed upon article 342–604 of the Banking Code. The Gutsch estate's funds were held by the Bank in its fiduciary capacity as executor of the estate, and the Bank was required to keep the funds segregated from its general assets. The Bank held the funds temporarily, pending the outcome of litigation which would determine whether it would place them in a charitable trust or distribute them to the beneficiaries. We hold that these were funds "awaiting investment" within the meaning of article 342–604 and 12 U.S.C.A. § 92a, and that the Bank was thereby authorized to invest the funds in its own certificates of deposit pending final determination of their proper dispersal. This interpretation most fully effectuates the purpose of the statute to allow efficient temporary investment of funds held in trust by a bank pending their ultimate disposition, while providing maximum security for those funds.

The Humane Society next contends that, even if the Bank's purchase of its own certificates of deposit was not wrongful *per se*, the Bank should be liable for profits which it could have realized by investing the funds in certificates of other banks and savings and loan institutions. The Humane Society offered proof at trial that the higher interest rates offered by other banks would have yielded $3,775.66 more over the sixteen months during which the funds were invested.

 Although article 342–604 and 12 U.S.C.A. § 92a authorize the Bank to use the trust funds in the conduct of its busi-

ness provided it sets aside the proper security, these statutes do not relieve the Bank of its fiduciary duty to the estate. The Bank holds the estate funds in trust for the beneficiaries, and in its dealings with the fund the Bank must act in scrupulous good faith, casting aside completely its personal interest and opportunities for gain resulting from the fiduciary relationship. See *Johnson v. Peckham,* 132 Tex. 148, 120 S.W.2d 786 (1938); Tex.Prob.Code Ann. § 230(a) (1956). Austin National Bank's conduct in carrying out the probate court's order to sell the estate's bank stock and re-invest the proceeds must be measured by these strict fiduciary standards.

The order of the probate court authorized the Bank to invest the estate's funds in:

. . . certificates of deposit in banks and savings and loan institutions; day-in, day-out savings accounts; commercial paper in prime-rated corporations; U. S. Treasury bills, bonds or notes due within two years; and U. S. agency securities due within two years.

Mr. George K. Meriwether, senior vice-president and trust officer of the Bank, who was in charge of the administration of the Gutsch estate, testified that at the time the estate's bank stock was sold the interest rates for day-in, day-out savings accounts, U. S. Treasury bills, bonds and notes due within two years, and U. S. agency securities due within two years were less than interest rates offered by Austin National Bank on its certificates of deposit. He testified that he believed the interest rates for commercial paper in prime-rated corporations were lower than the Bank's rates also. This testimony was not challenged by the Humane Society. Another officer of the Bank testified that the interest rates paid on certificates of deposit purchased with estate funds were always at least equivalent to or more than the Bank's "published rates," the rates offered general customers of the Bank. This testimony is uncontradicted. Mr. Meriwether also testified that the Bank allowed him to cash in some certificates of the estate before their maturity

dates and purchase new certificates at higher rates when it was advantageous to do so, and that other banks in the area would not have allowed him to do so.

The Humane Society offered evidence that other banks and savings and loan institutions in the Austin area were offering interest rates as much as one percent higher than rates offered by Austin National Bank on comparable certificates of deposit during the seventeen-month period that the estate's funds were invested in Austin National Bank's certificates. Based on this evidence, the Humane Society contends that by investing in these other institutions' securities the estate funds could have earned $3,775.66 more in interest during these seventeen months. While the Bank contests this figure, its officers admitted that other institutions were offering higher interest rates on certificates of deposit, and that the funds would have returned a better profit if invested in certificates of other institutions.

The rate of return, however, is not the only criterion for determining the propriety of the Bank's investment decision in this case. The safety of the trust fund is also a primary consideration of the fiduciary. *Republic National Bank & Trust Co. v. Bruce,* 130 Tex. 136, 105 S.W.2d 882 (Tex.Comm.App.1937, opinion adopted). This is especially true of funds of an estate held by an executor, whose primary duty is preservation of the estate for distribution. Austin National Bank set aside in its trust department qualified securities equivalent in value to the certificates of deposit purchased with the estate's funds, as required by the regulations of the Comptroller. Mr. Meriwether testified that other banks and institutions were prohibited by law from providing security for their certificates of deposit issued to general customers over the $20,000.00 limit set by the Federal Deposit Insurance Corporation and state law. This testimony, which was not challenged or contradicted, indicates that the Bank could not have obtained one hundred percent security

by investing the estate's funds in certificates of deposit of any other financial institution. The total interest earned on the Austin National Bank certificates of deposit during the sixteen-month period was $85,815.11, the interest rates varying from six to ten percent. Thus the extra interest of $3,775.66 to which the Humane Society contends it is entitled constitutes less than five percent of the total interest paid. The Bank's decision to forego this extra income and obtain instead the full security offered by its own certificates of deposit was not, we believe, in furtherance of its own self-interest to the detriment of the estate.

The Bank was investing the estate's funds in short-term certificates of deposit in order to be in a position to make prompt distribution of the money upon final conclusion of the court proceedings in the will construction case. From the time of the first investment in the certificates of deposit to the time the funds were delivered to the Humane Society was slightly less than sixteen months. During all of this time the estate was in litigation. The bank officers testified that they intentionally made short-term investments so they could be ready to deliver the estate on short notice. The distribution promptly occurred as soon as the litigation ceased.

█ Under the circumstances of this case the Bank did not breach its fiduciary duty as executor by preferring its own certificates of deposit over those of other institutions. The portion of the offset seeking $3,775.66 in lost income was properly denied by the probate court.

█ The Humane Society also seeks offsets against the Bank's claims for $8,731.13, the cost of taking care of the house and land given to the City of Austin and the storage fee for furniture and other personal property given to Mrs. Gutsch's godchild. The Bank had the duty to take care of the estate's assets as a prudent man would take care of his own property. Tex. Prob.Code Ann. § 230(a) (1956). This duty continued until the suit seeking a construc-

tion of the will was finally disposed of. These offsets were properly denied by the probate court.

█ Finally, the Humane Society challenges the Bank's claim for $8,100.00 in attorneys' fees and legal expenses for representation of the estate through the appeal of the will construction suit, on the ground that the representation was only for the benefit of the Bank and not the estate. We do not agree. There were serious questions concerning the construction of the will. The Bank's duty as executor was to determine the testatrix's intent and distribute the estate in accordance therewith; the actions of the Bank were in good faith and in accord with its duty to the estate. There is no contention that the amount of the claim for attorneys' fees is not reasonable. The Bank's claim was properly allowed. *Rowe v. Dyess,* 213 S.W. 234 (Tex.Comm.App. 1919).

The judgment of the Court of Civil Appeals is affirmed.

GREENHILL, C. J., not sitting.