121 Ill. App.3d 705 (1984)
460 N.E.2d 91
In re ESTATE OF DANIEL SWIECICKI, a Minor (Chester J. Swiecicki, Successor Guardian-Appellant,
v.
The Farmers and Merchants Bank of Highland, Former Guardian-Appellee).
No. 82-675.
Illinois Appellate Court  Fifth District.
Opinion filed February 8, 1984.
*706 Earl L. Vaugniaux, P.C., of Edwardsville, for appellant.
Donald C. Rikli, of Highland, for appellee.
Reversed and remanded.
PRESIDING JUSTICE HARRISON delivered the opinion of the court:
Chester Swiecicki, the successor guardian of the estate of Daniel Swiecicki, appeals from a judgment of the circuit court of Madison County which overruled his objections to the final report and account of the Farmers and Merchants Bank of Highland, the prior guardian of Daniel's estate. For the reasons which follow, we reverse and remand.
The facts relevant to this appeal are not in dispute. Daniel Swiecicki was born in 1969. Both of his parents died on June 18, 1977. The Farmers and Merchants Bank of Highland (Bank) was appointed as guardian of Daniel's estate on June 9, 1978, and held this position until submitting its resignation on January 30, 1981. During its tenure as guardian, the Bank invested Daniel's money in two six-month certificates of deposit in itself, and one similar certificate of deposit in the First National Bank of Nashville. These certificates paid interest of between 11% and 13%. During the times that Daniel's money was not invested in these certificates, it was placed in a passbook savings account at the Bank. This account paid 5 1/4% interest. *707 By making commercial loans at an interest rate higher than that which it paid on its own certificates of deposit and savings accounts, the Bank made a profit on the estate's funds during its term as guardian. In objecting to the final report and account of the Bank, the successor guardian, Chester J. Swiecicki, sought, inter alia, judgment against the Bank for the amount of the profits it derived from investing the minor's money in itself. The circuit court overruled this objection, and in a subsequent order approved the Bank's final report and account, with the exception of certain insurance payments not relevant to this appeal.
The sole question presented by this appeal is whether a bank, acting as guardian of the estate of a minor, which invests the estate's funds in its own savings accounts and certificates of deposit and makes a profit through use of the invested funds, must account to the estate for that profit. It should initially be noted that this case involves no claim that the Bank failed to keep the minor's money invested, commingled any funds or acted wrongfully in investing the funds without prior approval of the court. Rather, it is the claim of the successor guardian that the Bank, having made money by the manner in which it invested and then used the estate's funds, is required by its fiduciary responsibilities to turn its profit over to the estate. The search for the answer to this narrow question necessarily begins with an examination of what duties the Bank, as guardian of the estate, owed to the minor.
 1, 2 Illinois has long recognized the principle that a trustee shall not make any advantage to himself out of the trust fund, and that all profits thus made belong to the cestui que trust. (Rowan v. Kirkpatrick (1852), 14 Ill. 1, 10.) The purchase by a trustee for his own account of property of his trust is a breach of his duty to serve the interests of the beneficiary with complete loyalty. (Home Federal Savings & Loan Association v. Zarkin (1982), 89 Ill.2d 232, 239, 432 N.E.2d 841.) There is an inherent conflict of interest in such purchases since the trustee, as purchaser, is interested in acquiring the property at the lowest possible price, while his required loyalty to the beneficiary dictates that he seek to obtain the highest possible price for the trust property. 89 Ill.2d 232, 239-40.
 3 Applying these principles to the instant case, we are compelled to conclude that the estate is entitled to the profit which the Bank made through the use of the estate's money. As the vice-president and trust officer of the Bank candidly testified at the hearing on the final report and objections thereto, "the function of any bank is to make money * * * and to reinvest these funds into a community by loans and *708 things of this order, to make a community prosper." In seeking to maximize this profit, a bank has an undeniable interest in acquiring at the least possible cost the monies which it will later use to make commercial loans. Thus, in the instant case, the Bank's financial motives and fiduciary responsibilities were incompatible. As "buyer" of Daniel's money for its own use, the Bank had an interest in acquiring the money at the lowest possible rate, in order to insure the profitability of that acquisition. As "seller" of that same money for the purpose of earning interest income for the estate, the Bank as guardian was faced with the conflicting responsibility of considering only the interests of the estate in determining how to invest the estate funds. While it is not claimed, and there is no evidence to suggest, that the Bank acted with anything less than good faith in carrying out its responsibilities as guardian, this fact does not preclude application of the rule prohibiting the trustee from dealing with the trust property on his own account. "It avails nothing to show that the intentions of the trustee were honest * * *. [T]he only safe rule is one which absolutely forbids a trustee to occupy two positions inconsistent with each other." Joliet Trust & Savings Bank v. Ingalls (1934), 276 Ill. App. 445, 451.
 4 In making the determination which we reach here, we are cognizant of the fact that courts in other jurisdictions have found no conflict of interest on facts similar to those presented in this case. These cases essentially treat the institutional trustee as two separate entities, one which acts as trustee and the other which acts as custodian of the estate. From this premise it is reasoned that the trustee is not actually buying trust property on its own account (see, e.g., Breedlove v. Freudenstein (5th Cir.1937), 89 F.2d 324, 325), or that money made by the institution through its handling of the trust fund constitutes a reasonable profit for the institution in its capacity as custodian, provided that the trust is paid at least the prevailing rate of interest on the fund. (Hayward v. Plant (1923), 98 Conn. 374, 119 A. 341.) We find these cases unpersuasive, because we reject the premise underlying them. There is nothing to suggest that, in reality, the Bank here is anything other than one business entity, controlled by one board of directors and owned by a single set of stockholders. That acquisition of money at a low rate and subsequent loaning of money at a higher rate inures to the benefit of the Bank as a whole is a fact undoubtedly within the understanding of both the trust and commercial departments of the Bank, and we think it unrealistic to rigidly compartmentalize the Bank's business functions for purposes of analyzing its adherence to its fiduciary obligations. Moreover, it *709 does no injustice to the Bank to hold that it is not entitled to profit from its role as custodian of the deposit, since sections 1-2.15 and 27-1 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110 1/2, pars. 1-2.15, 27-1) allow the Bank reasonable compensation for its services as guardian.
 5, 6 In an additional argument in support of affirmance, the Bank relies on that section of the Probate Act of 1975 which provides that a representative of a ward's estate may, "* * * without approval of the court, invest in United States obligations and obligations of which both the principal and interest are guaranteed unconditionally by the United States." (Ill. Rev. Stat. 1981, ch. 110 1/2, par. 21-2(b).) We do not believe, however, that this statute operates to alter the common law duties of the Bank in the situation presented here. That the legislature chose to allow a guardian to invest in obligations guaranteed by the United States provides no indication that it also intended to permit the guardian to profit from those investments. "When a statute is enacted which covers an area formerly covered by common law, such statute should be construed as adopting the common law unless there is clear and specific language showing that a change in the common law was intended by the legislature." (Proud v. W.S. Bills & Sons, Inc. (1970), 119 Ill. App.2d 33, 45, 255 N.E.2d 64.) Nothing in the statute permitting a guardian to invest in obligations guaranteed by the United States indicates a legislative intent to override the common law duty owed by the guardian, and we will not infer the existence of such an intention.
 7-9 Finally, we believe that the remaining statutes discussed by the parties lend additional support to the result reached here. Section 21-1.03 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110 1/2, par. 21-1.03) expressly permits the representative of a decedent's estate to invest in savings accounts or certificates of deposit in a State or national bank "* * * even though the bank of deposit is the representative of the estate * * *." That section of the Act allowing the representative of a ward's estate to make similar investments, however, contains no provision permitting the representative to invest in itself. (Ill. Rev. Stat. 1981, ch. 110 1/2, par. 21-2.06.) It is not within the province of this court to enlarge the meaning of a statute by adding language aimed at correcting any supposed omission or defect (Belfield v. Coop (1956), 8 Ill.2d 293, 307, 134 N.E.2d 249), and we will not presume in this case that the legislature intended to significantly alter the common law fiduciary rules pertaining to guardians without saying so. Nor do we believe that section 3 of "An Act to provide for and regulate the administration of trusts by trust companies" (Ill. *710 Rev. Stat. 1981, ch. 17, par. 1555), discussed in the dissenting opinion, affects the result here. The funds in question were not "awaiting investment or distribution" as contemplated by section 3; rather, the bank actually invested these funds in its own savings accounts and certificates of deposit during the 2 1/2 years it served as guardian of the minor's estate.
For the foregoing reasons, the judgment of the circuit court of Madison County is reversed, and this cause is remanded to the circuit court for further proceedings consistent with this opinion.
Reversed and remanded.
KASSERMAN, J., concurs.
JUSTICE JONES, dissenting:
I respectfully dissent.
The majority's holding that a bank serving as guardian of a minor's estate violates its duty of loyalty when it deposits the estate's funds in its own savings accounts and certificates of deposit is, I believe, contrary to legislative intent regarding a bank's investment of funds held in trust. Notwithstanding the general common law rule that a trustee shall not make any advantage to itself of a trust fund, the legislature of this State has specifically authorized the deposit of trust funds by a corporate trustee in its own banking department under certain conditions. Such a deposit of trust funds "awaiting investment or distribution" is proper under section 3 of "An Act to provide for and regulate the administration of trusts by trust companies" (Ill. Rev. Stat. 1981, ch. 17, par. 1555), provided the deposit is protected by securities set aside for that purpose or is guaranteed by the Federal Deposit Insurance Corporation. Since the facts of this case bring it squarely within the scope of that section, the result reached by the majority is erroneous.
In considering whether, under the general common law rule regarding a trustee's duty of complete loyalty to its cestui que trust, a bank may deposit trust funds in its own banking department, courts of other jurisdictions have reached different conclusions. (See 2 Scott, Trusts sec. 170.18 (3d ed. 1967); Bogert, Trusts & Trustees sec. 543(K) (2d rev. ed. 1978), sec. 598 (2d rev. ed. 1980); Hunsicker, Conflicts of Interest Economic Distortions, & the Separation of Trust & Commercial Banking Functions, 50 So. Cal. L. Rev. 611, 619-26 (1977) (hereinafter Hunsicker, Conflicts of Interest); Annot., 88 A.L.R. 205, 212-18 (1934); see E. Herman, Conflicts of Interest: Commercial *711 Bank Trust Departments 107-21 (1975) (hereinafter Herman, Commercial Bank Trust Departments).) Courts dealing with this question have noted the inherent conflict of interest that arises from a bank lending trust money to itself individually. Thus, it has been said, a corporate trustee may be tempted to leave large amounts of trust monies on deposit for an unnecessarily long time due to the convenience and profit derived from the use of such funds (Bogert, Trusts & Trustees sec. 543 (K), at 313 (2d rev. ed. 1978), sec. 598, at 488 (2d rev. ed. 1980)), and may be tempted to make and continue such deposits despite knowledge by the bank's officers that the bank is in a precarious financial position. 2 Scott, Trusts sec. 170.18, at 1357 (3d ed. 1967).
The potential for self-dealing resulting from the temptation to consider the commercial activities of a bank in administering its trusts (see 2 Scott, Trusts sec. 170.23A, at 100 (Supp. 1983)) has led in some instances to a flat prohibition against a corporate trustee depositing trust funds in its own accounts. Indeed, the American Law Institute, after much deliberation (see 2 Scott, Trusts sec. 170.18, at 1357-58 (3d ed 1967)), adopted the position in its Restatement of Trusts that a bank or trust company that makes a general deposit of trust funds in its own banking department thereby commits a breach of trust, unless it is authorized to do so by the terms of the trust (Restatement of Trusts sec. 170, comment m (1935)). This rule was continued in the Restatement (Second) of Trusts sec. 170, comment m (1959). It is, however, common practice for banks and trust companies to deposit trust funds in their own institutions (see Herman, Commercial Bank Trust Departments 108-09), and, despite the view of some courts that such transactions involve disloyalty, this practice is sanctioned by the weight of authority at common law. Bogert, Trusts & Trustees sec. 598, at 488-89 (2d rev. ed. 1980); Hunsicker, Conflicts of Interest 620.
Notwithstanding the treatment of the issue at common law, in Illinois, as in many other States, the matter of deposits by a corporate trustee in its own banking department is controlled by statute. (See 2 Scott, Trusts sec. 170.18, at 1359-61 (3d ed. 1967); Bogert, Trusts & Trustees sec. 543(K), at 314-16 (2d rev. ed. 1978), sec. 598, at 492-94 (2d rev. ed. 1980).) The Illinois statute states, in pertinent part:
"All funds deposited with or held in trust by [a corporation authorized to accept or execute trusts] awaiting investment or distribution, whether intrusted to it for investment by [the] court, or otherwise, shall be carried in a separate account and shall not be commingled with its own funds or used by such corporation in the conduct of its business unless it shall first set aside in its trust department * * * [proper securities] having *712 an aggregate market value, at all times, of at least 100% of the amount of such trust funds, unless such trust funds are insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation; in that event the aggregate market value may be reduced by the amount of federal insurance." (Ill. Rev. Stat. 1981, ch. 17, par. 1555, formerly ch. 32, par. 289.)
A Federal statute (12 U.S.C. sec. 92a(d) (Supp. 1983)) makes similar provision for national banks operating in the State. See Comptroller of the Currency Regulation 9.10, 12 C.F.R. sec. 9.10 (1983).
These statutes, providing conditions under which the deposit of trust funds in a bank's own accounts is proper, effectively qualify the general common law fiduciary rule against self-dealing in the case of a corporate trustee holding funds for investment or distribution. (Hunsicker, Conflicts of Interest 620; New England Trust Co. v. Triggs (1956), 334 Mass. 324, 135 N.E.2d 541 (interpreting similar Massachusetts statute); cf. First National Bank v. Weaver (1932), 225 Ala. 160, 142 So. 420 (statute "inferentially authorized" deposit of funds held by executor bank so as to relieve bank from liability under rule against a self-dealing); Humane Society v. Austin National Bank (Tex. 1975), 531 S.W.2d 574, cert. denied (1976), 425 U.S. 976, 48 L.Ed.2d 800, 96 S.C. 2177 (executor bank's purchase of its own certificates of deposit authorized by statute and thus not per se violation of its fiduciary duty).) As such, they provide an exception to the general rule prohibiting a trustee from dealing with trust property on its own account (see Home Federal Savings & Loan Association v. Zarkin (1982), 89 Ill.2d 232, 432 N.E.2d 841).
This exception can be justified on policy grounds as allowing "efficient temporary investment of funds held in trust by a bank pending their ultimate disposition, while providing maximum security for those funds." (Humane Society v. Austin National Bank (Tex. 1975), 531 S.W.2d 574, 579.) The convenience for a corporate trustee of making such deposits in itself rather than in another institution is evident. (See Bogert, Trusts & Trustees sec. 543(K), at 317 (2d rev. ed. 1978); Commissioners' Prefatory Note, Uniform Trusts Act, 9A Uniform Laws Annotated 335 (1968); New England Trust Co. v. Triggs.) Moreover, by reason of the security requirements of the statute,
"[t]he situation of the beneficiaries * * * is superior to that which existed at common law in those states which prohibited the corporate trustee from depositing with itself and required it to make the deposit with another bank. Under that rule the deposit had no security behind it, and in case of failure of the *713 bank of deposit there was no preference. Under the * * * statutory rule there is great security for the trust deposits, first through the insurance provided by the F.D.I.C., and secondly through the fund which is set apart in the trust department of the bank as security for all trust deposits." Bogert, Trusts & Trustees sec. 598, at 495 (2d rev. ed. 1980).
While it may be objected that, despite these considerations of convenience and security, there remains the potential for self-dealing inherent in a bank's use of trust funds deposited in its own accounts, the statutes here referred to reflect a legislative recognition of the distinctive character of corporate trustees. (See In re Smith's Estate (1931), 112 Cal. App. 680, 297 P. 927.) Banks serving as trustees are subject, not only to rules regarding investments applicable to trustees generally, but also to various requirements regarding capital, surplus, reserves, securities and inspection. (See Ill. Rev. Stat. 1981, ch. 17, pars. 1551-70.) Such trust companies operate in a regulated environment under the supervision of banking authorities and are required to be examined, separately from an affiliated banking department, regarding their investment of funds and their actions generally. (See Ill. Rev. Stat. 1981, ch. 17, par. 1564; but see Hunsicker, Conflicts of Interest 623-25, where the author argues that regulation affords only limited protection against abuse in the holding of cash by trust departments.) There is the additional factor of competition among corporate trustees for fiduciary accounts, which would arguable induce trust companies to invest trust funds profitably in order to secure these accounts. (Herzel & Colling, The Chinese Wall & Conflict of Interest in Banks, 34 Bus. Law. 73, 108-09 (1978); see New England Trust Co. v. Triggs; Hunsicker, Conflicts of Interest 625.) In any event, the legislature of this State, by enacting section 3 to allow the deposit of trust funds by a corporate trustee in its own banking department, has made a policy decision that the benefits to be afforded outweigh the potential for self-dealing inherent in such transactions. For this reason, the omission, referred to by the majority, of express statutory language permitting the representative of a ward's estate to invest in its own accounts (see majority opinion) must be regarded as mere legislative oversight rather than as an expression of legislative intent.
Although the statutes here noted authorize the use of trust funds in the conduct of a trustee bank's business, these statutes do not relieve the bank of its fiduciary duty as trustee. (Humane Society v. Austin National Bank (Tex. 1975), 531 S.W.2d 574.) Rather, it has been said, "[a] trustee bank which exercises its statutory right to hold *714 trust funds in its commercial department accepts * * * the increased responsibilities which the circumstances impose" (New England Trust Co. v. Triggs (1956), 334 Mass. 324, 334, 135 N.E.2d 541, 548) and "must act in scrupulous good faith, casting aside completely its personal interest and opportunities for gain resulting from the fiduciary relationship." (Humane Society v. Austin National Bank (Tex 1975), 531 S.W.2d 574, 580; see Hunsicker, Conflicts of Interest, at 625; In re Estate of Jones (1960), 400 Pa. 545, 162 A.2d 408.) Thus, while not improper per se, the deposit of trust funds in a trustee bank's own accounts may be improper where held for an unreasonably long time (cf. New England Trust Co. v. Triggs ($100,000 left uninvested for over two years); In re Jones' Estate (cash proceeds of decedent's estate not invested for at least five years); In re Estate of Lare (1969), 436 Pa. 1, 257 A.2d 556 (substantial sums of cash allowed to lie idle over 20-year period)) or where deposited at a time when the officers of the bank knew that it was in a precarious financial condition (see 2 Scott, Trusts sec. 170.18, at 1361 (3d ed. 1967)). The deposit of trust funds in itself by a corporate trustee, then, must be consonant with principles of good faith and reasonableness in order to come within the cloak of immunity afforded by the statutes authorizing such deposits.
In the instant case, as the majority notes, there is no claim that the trustee bank acted wrongfully in failing to keep the minor's money invested or exhibited anything less than good faith in carrying out its responsibilities as guardian. Rather, the appellant seeks, and the majority imposes, a per se rule that the bank's use of trust funds in the conduct of its business constitutes a violation of its fiduciary duty and renders the bank liable for profits derived from such funds. As the above analysis reveals, this result is inconsistent with the plain meaning of the statute authorizing the deposit of trust funds in the accounts of a trustee bank.
It appears from an examination of the record that the facts of the instant case bring it squarely within the scope of section 3. The bank's trust officer testified, and it was not disputed, that the minor's funds deposited in the bank's savings accounts and certificates of deposit were fully insured by the F.D.I.C. so as to meet the security requirement of the statute. As to the temporary nature of the deposits, it was also undisputed that the decision to make such deposits was based on the "uncertainty of when this guardianship would be leaving [the bank]." The trust officer testified that he had been informed that the minor's relatives wished to change guardians from his bank to another bank. He stated that

*715 "this did give me an amount of uncertainty as to what to invest in, because I did not know what the successor guardian would want the monies in, and also the timing [sic]. My information was we would be losing this as soon as the estate of Daniel Swiecicki's mother was settled, and so I was uncertain of the timing of when this could be done [sic]."
Therefore, he stated, the minor's funds "[were] left in a savings position, a ready liquid position to be disbursed to the successor guardian." From this testimony it can be seen that the minor's funds were "awaiting investment or distribution" so as to come within the provision of the statute. See Humane Society v. Austin National Bank (Tex. 1975), 531 S.W.2d 574.
Finally, it should be noted that the funds of the minor here were invested at all times in accounts paying interest at the market rate. There is no contention that the funds were placed in non-interest-paying checking accounts or that the interest rate was less than that paid by the bank on other deposits of a similar nature. The Illinois statute provides that a trustee bank "shall pay" interest on trust funds deposited in its own accounts
"* * * at such rate as may be agreed upon at the time of its acceptance of [an] appointment, or as shall be provided by the order of the court." (Ill. Rev. Stat. 1981, ch. 17, par. 1556.)
While there is no indication here of an express agreement regarding the interest rate to be paid, it is consistent with the bank's acceptance of the appointment and its fiduciary duty to the minor to imply an agreement to pay the same rate of interest as the bank paid on similar deposits. (See Hayward v. Plant (1923), 98 Conn. 374, 119 A. 341; see also Annot., 88 A.L.R. 205, 214-17 (1934); Bogert, Trusts & Trustees sec. 598, at 496 (2d rev. ed. 1980).) In the absence of a basis for holding the bank liable for profits from the use of the minor's funds, the bank's payment of interest at the market rate leads to the same result as if the bank had taken the funds to any other institution and deposited them in similar accounts. (See In re Moore's Estate (1905), 211 Pa. 348, 60 A. 991; In re Smith's Estate.) Thus, the bank's actions here were proper, and the decision of the trial court approving the bank's final report and account should be affirmed.