Bayliss McINNIS, et al., Appellants,

v.

CORPUS CHRISTI NATIONAL BANK, et al., Appellees.

No. 1811.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 20, 1981.

Rehearing Denied Sept. 24, 1981.

Robert M. Hardy, Jr., Butler, Binion, Rice, Cook & Knapp, Houston, for appellants.

Lev Hunt, Kleberg, Dyer, Redford & Weil, Corpus Christi, for appellees.

## OPINION

YOUNG, Justice.

This is an appeal of a take-nothing judgment in favor of Corpus Christi State National Bank, appellee, acting as Independent Executor of the Estate of Eula Cage Hefley and as Trustee of the Hefley Trust. Appellants, Bayliss McInnis, Kathryn McInnis, and Zoe C. Heep, as beneficiaries under the will of Eula Cage Hefley, filed suit to recover shares of stock in a financial corporation which were allegedly wrongfully sold by the appellees. We affirm.

The pertinent facts of this appeal are as follows. In 1968, E. H. and Eula Cage Hefley executed a Trust Agreement providing for formation of the Hefley Trust. E. H. and Eula Cage, as Trustors, conveyed to the Trust both personal and real property for the "primary purpose . . . to provide for the care, support, maintenance, and health of the Trustors." Shares of stock in a financial organization (14,952 shares of Southwestern Group Investors, Inc.) were included in the trust assets. Eula Cage was named the trustee and Corpus Christi State National Bank was named the Successor Trustee. The trust estate was to be held ". . . in trust for the benefit of the Trustors for so long as either of the Trustors shall live." The Trust further provided: "(U)pon the death of the last to die of the Trustors, all the property then constituting the trust estate of the HEFLEY TRUST shall vest in the estate of the last one to die of the Trustors. At such time as the trust estate has been fully distributed, the trust created herein shall terminate."

On March 25, 1969, E. H. Hefley died. The following year, on July 1, 1970, Eula Cage Hefley resigned as trustee, thereby placing the Bank as trustee of the Hefley Trust. On September 8, 1976, Eula Cage Hefley died leaving a will which appointed the Bank Independent Executor of her Estate. Her Estate was to be divided between four beneficiaries, who are the appellants herein.

In May and June, 1977, some nine months after the death of Eula Cage Hefley, the Bank sold the Southwestern Group Investors, Inc., stock. Upon learning of the sale of the stock, the beneficiaries allegedly requested on numerous occasions that the Bank repurchase the stock. The Bank refused to do so. In February, 1979, the stock, by virtue of a stock exchange with another corporation, substantially increased in value.

The beneficiaries of the Estate of Eula Cage Hefley brought this suit to recover the stock that was allegedly wrongfully sold out of the Estate. They contend that there was no need to sell the stock as there were no outstanding claims against the Estate. They further contend that the Bank exceeded its power to sell the stock under the Trust Agreement since the trust had dissolved upon the death of Eula Cage Hefley. The trial court, after a non-jury trial, entered a take-nothing judgment in favor of the Bank.

■ A resolution of this appeal requires a determination of whether the Bank was acting as Trustee of the Hefley Trust or as Independent Executor of the will of Eula Cage Hefley when it sold the stock. After reviewing the findings of fact and conclusions of law filed by the trial court and the record on appeal, we hold that the Bank was acting as Independent Executor of the will when the stock was sold.

The stock was sold some ninth months after the death of Mrs. Hefley. The Inventory, Appraisement, and Lists of Claim of the Estate of Eula Cage Hefley lists the stock as an asset of the Estate. The Bank records were changed to reflect that all assets belonged to the Estate of Eula Cage Hefley. It is also undisputed that the stock was listed both on the United States Estate Tax Return and the Texas Inheritance Tax Return, and the gain from the sale of the stock was reported on the income tax return of the Estate of Eula Cage Hefley. Testimony from Bank officials also confirmed that the stock was a part of the Estate and that the Trust had terminated. All of this evidence establishes that the stock was an asset of the Estate.

As an asset of the Estate, the independent executor could have and, in fact, did sell the stock pursuant to § 333 of the Probate Code:

"§ 333. Certain Personal Property to Be Sold

The representative of an estate, after approval of inventory and appraisement, shall promptly apply for an order of the court to sell at public auction or privately, for cash or on credit not exceeding six months, all of the estate that is liable to perish, waste, or deteriorate in value, or that will be an expense or disadvantage to the estate if kept. . . ."

Tex.Prob.Code Ann. § 333 (1980).

One legal commentary has defined the personal property encompassed by this section as follows: "Property embraced within the terms of the statute would include such items as perishable farm produce, *stocks or other securities subject to rapid fluctuation in value*, and livestock." (Emphasis supplied.) 18 Woodward & Smith, Texas Practice § 963 (1971).

The trial court, in its conclusions of law, did find that the Bank had the authority to make such a sale as Independent Executor. This conclusion was based on the findings of fact found by the trial court that: 1) the stock was ". . . low-yielding stocks, subject to rapid fluctuation in value, for which there was no market."; 2) the stock was ". . . liable to perish, waste or deteriorate in value, or would be an expense or disadvantage to the Estate if kept"; 3) the stock was sold ". . . at the best price obtainable for such stocks, and at their then market values"; 4) the Bank ". . . acted honestly and reasonably . . ." in connection with the sales of such stocks; and 5) the Estate was not damaged by the sale. All the requirements for such a sale under § 333 were complied with.

■ When the evidence is viewed in the light most favorable to the trial court's judgment, disregarding all evidence and inferences to the contrary, there is evidence of a probative nature to support the findings. See *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 609 (Tex.1979); *Copenhaver v. Berryman*, 602 S.W.2d 540 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). A trust officer of a local bank, who had managed stock in the same corporation, Southwestern Group Investors, Inc., testified that a sale of 1000 shares of the stock caused a market fluctuation of $2.00 per share in one day. (The market price at that time fluctuated around $4.50). He also testified that there was very little market for the stock, and that the return on the stock was not sufficient enough to merit keeping the stock in a guardianship's portfolio. He further testified that he would choose not to have shares of stock similar to the disputed stock in question in a portfolio of a guardianship trust. Similar testimony about the low value of the stock, the absence of a market for sale, and the low dividend return on the stock was presented to the trial court by the officer in charge of the sale. The trial court, as the trier of facts, could have reasonably concluded that

the stock was a disadvantage to the Estate, and that the Bank acted in good faith when it sold the stock. See *Humane Society, Etc. v. Austin Nat. Bank*, 531 S.W.2d 574, 580 (Tex.1976).

In holding that the Bank acted properly when selling the stock in its capacity as Independent Executor of the Estate of Eula Cage Hefley, we need not discuss appellants' points regarding the Hefley Trust. All of appellant's points of error are overruled.

The judgment of the trial court is affirmed.