Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-10-00271-CV

Maria Teresa **GUERRA**,
Appellant

v.

Armengol **GUERRA** III,
Appellee

From the County Court At Law No. 1, Webb County, Texas
Trial Court No. 2007-PB7-000063-L1
Honorable Alvino (Ben) Morales, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Karen Angelini, Justice
                Steven C. Hilbig, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  August 24, 2011

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART

This appeal arises from Maria Teresa Guerra's suit against her brother, Armengol Guerra III ("Armengol"), for breach of fiduciary duty as the independent executor of their father's estate, and as an officer, director, and majority shareholder of Laredo Hardware Company. Maria also sued Armengol for conversion, a declaratory judgment, and a partition of real property owned jointly by Maria, Armengol and their sister Yolanda Jo Guerra.[1] The trial court granted

---

[1] Armengol did not seek summary judgment on Maria's partition claim, and the parties agree there must be a remand on that claim.

Armengol a no evidence and a traditional motion for summary judgment on Maria's claims. Maria appeals the summary judgments. We affirm in part and reverse and remand the partition of real property claim.

## BACKGROUND

### *Factual overview*

Laredo Hardware Company is a family-owned business started by Armengol Guerra Jr. ("Guerra"). Armengol began working at the company in 1971 after he graduated college. Guerra acted as president of the company until 2002 when Armengol became president. Guerra passed away in 2007, and Armengol was appointed independent executor of his father's estate. Armengol and his sisters, Maria and Yolanda Jo, are the beneficiaries under Guerra's will.

Guerra owned thirty-seven percent of Laredo Hardware stock at the time of his death. The other shareholders include Maria, Armengol, Yolanda Jo, Bertha Guerra (Armengol's wife), and Armengol's two sons (Ricardo Xavier Guerra and Carlos Mariano Guerra). Laredo Hardware's board of directors includes Armengol, Yolanda Jo, Bertha, Ricardo, and Carlos. Maria has never been an officer or director of Laredo Hardware, but has been employed at the company on several different occasions.

On July 30, 2007, Maria was notified that Laredo Hardware elected not to exercise its option to purchase Guerra's shares in Laredo Hardware stock and, pursuant to a stock option agreement, she could purchase the stock for net book value. The record reflects Maria did not buy the stock, but offered to sell her shares to Armengol on April 9, 2008. Armengol did not purchase the stock, and Maria filed suit against Armengol and Laredo Hardware on April 25, 2008. Armengol distributed Guerra's shares pursuant to his will in May 2008.

### *Maria's and Armengol's allegations*

Maria claims Armengol breached his fiduciary duty as an officer and director of Laredo Hardware and engaged in minority shareholder oppression by refusing to liquidate Laredo Hardware after her father's death. Maria also alleged Armengol breached his fiduciary duty as independent executor of their father's estate by not liquidating the company and acted to promote his own interest. [2]

As remedies, Maria sought actual and exemplary damages, attorney's fees and costs, and pre- and post-judgment interest. She also prayed that the trial court declare the value of her Laredo Hardware stock and that the Inventory, Appraisement and List of Claims was "not true." Maria also requested the court order Armengol and Laredo Hardware to buy her shares in the company and order a partition of the jointly owned property. Maria did not seek appointment of a receiver or any other relief calculated to result in the liquidation of Laredo Hardware. [3] Armengol counterclaimed, alleging conversion, civil theft, and that Maria's lawsuit was frivolous, unreasonable, and groundless. Laredo Hardware also filed a counterclaim alleging that Maria's suit was frivolous, unreasonable, and groundless.

### *Armengol's motions for summary judgment*

Armengol filed a no evidence motion for summary judgment, asserting there is no evidence he owed Maria a fiduciary duty in his capacity as an officer and director of Laredo

---

[2] Maria also sued for conversion and declaratory relief but has abandoned those claims on appeal.

[3] Maria states in her amended brief that she asked for a court-ordered liquidation of Laredo Hardware and cites to page 170 of the clerk's record. However, the third amended petition on page 170 does not contain any request that the court order a liquidation; rather, it states that Armengol has refused to liquidate the company.

Hardware. He also asserted there is no evidence he breached his fiduciary duty in his capacity as independent executor, or that he engaged in minority shareholder oppression.[4]

In her response, Maria asserted Armengol breached his fiduciary duties in his capacity as an officer and director and committed shareholder oppression by :

—usurping a corporate opportunity when he purchased the land on which Laredo Hardware is located, entered a lease with Laredo Hardware, and increased the rent;

—failing to liquidate Laredo Hardware; and

—using Laredo Hardware funds to pay his attorney's fees.

Maria asserted Armengol breached his executor's duties to preserve the value of the estate by not liquidating the company. She argued his refusal to liquidate the company created a conflict of interest because he preserved his employment and income derived from Laredo Hardware to her detriment as a devisee of a percentage of the company stock. To support her argument, Maria relied on an affidavit from her expert Richard Cortez and a report prepared by James Park, an accountant hired by the estate to value the estate for tax purposes. Maria argued Cortez's testimony demonstrated that Armengol had a duty to liquidate Laredo Hardware because as of April 2007, it was in the best interest of Laredo Hardware and its shareholders to liquidate the assets of the company. Maria also relied on Armengol's deposition testimony and documents from her attorneys. The trial court granted the no-evidence motion for summary judgment.

After the no-evidence motion was filed, Armengol and Laredo Hardware also filed a traditional motion for summary judgment and urged that (1) Maria did not have standing to bring a claim against Armengol as officer or director; (2) Maria's claims are barred by the business judgment rule; (3) liquidation is an improper remedy; (4) Armengol has not engaged in

---

[4] He also asserted there is no evidence Armengol converted property and Maria does not raise an issue on appeal concerning the conversion claim.

oppressive conduct; (5) Armengol, as majority shareholder, does not owe Maria, as a minority shareholder, a fiduciary duty because there is no special relationship between the two; (6) Armengol did not usurp the company's opportunity to buy the property where Laredo Hardware is located because Laredo Hardware's board of directors approved the decision not to purchase the real property in the company's name and also approved the lease agreement; (7) Maria's request for a declaration of the value of her shares is redundant of her claims for conversion and liquidation of Laredo Hardware because those claims already require valuing the shares; (8) Maria is not entitled to attorney's fees; (9) the court lacks jurisdiction over Maria's request for a declaration concerning the Inventory, Appraisement and List of claims because she failed to bring a timely contest; and, (10) Maria cannot sue for conversion of shares belonging to her father.

Maria responded that her breach of fiduciary duty claims against Armengol in his capacity as an officer and a director are derivative claims brought on behalf of Laredo Hardware. She also asserted that Armengol and Laredo Hardware did not address in their motion all of the grounds on which shareholder oppression can be found. On the merits of the breach of fiduciary duty claims, Maria again asserted that Armengol (1) usurped a corporate opportunity and increased Laredo Hardware's rent for his own personal gain, and (2) used company funds to pay his attorney's fees. Maria asserted that the business judgment rule does not shield Armengol from liability because he is not a disinterested director. Finally, Maria urged that she is entitled to attorney's fees under the Declaratory Judgment Act, and under section 5.14 of the Texas Business Corporations Act because she is a shareholder asserting a derivative claim.

On February 12, 2010, the trial court signed an order granting the amended motion for summary judgment, ordered Maria take nothing, and severed Armengol's and Laredo Hardware's counterclaims. Maria appeals.

## DISCUSSION

### *Executor's fiduciary duty*

Armengol was appointed the independent executor of his father's estate. Section 230 of the Texas Probate Code provides "[the] executor or administrator shall take care of the property of the estate of his testator . . . as a prudent man would take of his own property. . . ." TEX. PROB. CODE ANN. § 230 (West 2003). An executor has a duty to protect the beneficiaries' interest in the estate by dealing in good faith with fidelity and integrity. *Humane Soc'y of Austin and Travis Cnty. v. Austin Nat'l Bank*, 531 S.W.2d 574, 577 (Tex. 1975); *In re Roy*, 249 S.W.3d 592, 596 (Tex. App—Waco 2008, pet. denied); *Geeslin v. McElhenney*, 788 S.W.2d 683, 685 (Tex. App.—Austin 1990, no writ). An executor's personal interests may not conflict with his fiduciary obligations to the estate. *Humane Soc'y*, 531 S.W.2d at 577. The executor is prohibited from using his position to gain any benefit for himself at the expense of his estate and from placing himself in any position where his self-interest will or may conflict with his obligations as executor. *Id.* (citing *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 388 (1945)). However, merely being in a position that may create a conflict is not alone a breach of his fiduciary duty. *Id.* For there to be a conflict of interest and a breach of fiduciary duty, an executor must use his power as executor for his personal interest at the expense of the estate. *Lesikar v. Rappeport*, 33 S.W.3d 282, 297 (Tex. App.—Texarkana 2000, pet. denied) (citing *Slay*, 187 S.W.2d at 388).

Maria contends Armengol's primary duty was to preserve the assets of her father's estate for distribution to the beneficiaries, and by not liquidating Laredo Hardware, the value of the

stock was diminished. Maria asserts Armengol knew from Park's report the estate was "hemorrhaging value every year" Laredo Hardware continued to operate, and the failure to liquidate Laredo Hardware was a breach of his duty to preserve estate assets. However, Laredo Hardware was not an estate asset. Rather, the estate owned company stock, which represented only a thirty-seven percent, non-controlling interest in the company. Maria implies Armengol was required to engage in a course of conduct which would result in liquidation. Maria cites no authority that Armengol had a duty to take affirmative steps to liquidate Laredo Hardware.

Maria cites section 333 of the Texas Probate Code as authority to liquidate. Section 333 authorizes an executor to sell estate property subject to waste or to deterioration in value. TEX. PROB. CODE ANN. § 333 (West 2003). She claims that stock subject to rapid fluctuations in value or otherwise liable to deteriorate in value may fall under section 333, citing *McInnis v. Corpus Christi Nat'l Bank*, 621 S.W.2d 451 (Tex. Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.). However, this provision grants Armengol the power to sell the estate's shares of Laredo Hardware upon court approval, not to dissolve a company in which it owns stock. There is no evidence that Armengol, as the executor of his father's estate, had the authority or power to liquidate Laredo Hardware. Armengol had a duty to use reasonable care to preserve estate assets. *Lawyers Sur. Corp. v. Snell*, 617 S.W.2d 750, 752 (Tex. Civ. App.—Houston [14th Dist.] 1981, no writ); *Humane Soc'y*, 531 S.W.2d at 580; *Frost Nat'l Bank of San Antonio v. Kayton*, 526 S.W.2d 654 (Tex. Civ. App.—San Antonio 1975, writ ref'd n.r.e.). He did not have a duty to persuade shareholders in a corporation to liquidate the company.

Additionally, neither Cortez's affidavit, nor Park's report raise a fact issue on whether Armengol failed to act as a reasonably prudent person would in dealing with estate assets. Park's report provided the estimated fair market value of the estate's shares in Laredo Hardware as of

April 30, 2007. The report identified three methods for valuing stock: income approach, market approach, and cost approach. Park determined the best approach to estimate the value of owning thirty-seven percent of Laredo Hardware was a combination of the cost and income methods. After a lengthy analysis using several different approaches and discounting the value because the estate owned a non-controlling interest in the company, Park concluded the discounted marketable value of the stock in April 2007 was $822.22 per share. Maria's attorneys acknowledged Park's estimated value was a discounted value in a letter to Armengol when attempting to sell Maria's shares. The letter stated:

> The value of the Estate's shares listed in the valuation report is not a proper value to be considered in a sale. Instead, the report states it was prepared only for the purposes of determining estate taxes. Moreover, the report applied a discount based on the facts that (i) the actual value of the Company could only be derived by liquidating the Company and (ii) the Estate's thirty-seven percent ownership interest is not enough to compel liquidation. However, that discount is not applicable to a sale in our case because after considering our client's stock interest, Mr. Armengol Guerra, III would have enough stock to liquidate the Company. At our meeting last week, we offered to sell our client's stock at $1,250 per share. The offer remains open until Friday April 11, 2008 at 3:00 p.m.

The report did not inform Armengol the value of the stock was falling fast as argued by Maria.

Cortez's affidavit does not raise a fact issue on whether Armengol used reasonable care as executor. Cortez's opinion that it was in the best interest of Laredo Hardware to liquidate its assets in 2007 is unsupported surmise, conclusory and speculative. For example, his affidavit assumes, without any explanation, that sales revenues for the first two months of one year are an adequate measure of its projected sales revenue for the remainder of the year and does not provide a discussion of how he reached his conclusion that as of April 30, 2007, it was in the best interest of Laredo Hardware and its shareholders to liquidate the assets of the company. Conclusory or speculative opinion testimony is incompetent and constitutes no evidence. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009).

There is no evidence Armengol breached his fiduciary duty to the estate's beneficiaries.

*Fiduciary duties of officer and director*

Armengol sought summary judgment on Maria's claims for breach of fiduciary duty in his capacity as an officer and director of Laredo Hardware on the ground Maria lacked standing to bring the claim for her personal damages. An officer or director owes a duty to the corporation, not to individual shareholders, unless some contract or special relationship exists between them separate from the corporate relationship. *Redmon v. Griffith*, 202 S.W.3d 225, 236 (Tex. App.—Tyler 2006, pet. denied); *Faour v. Faour*, 789 S.W.2d 620, 622 (Tex. App.—Texarkana 1990, writ denied). A corporate shareholder has no individual cause of action for personal damages caused solely by a wrong done to the corporation. *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990). The cause of action for injury to the property of a corporation or for impairment or destruction of its business is vested in the corporation, as distinguished from its shareholders, even though the harm may result indirectly in the loss of earnings to the shareholders. *Id.*

Maria argues her claim against Armengol in his capacity as an officer and director is a derivative suit because she pled it as one and complied with section 5.14 of the Business Corporation Act,[5] which requires a demand letter be sent to the corporation. However, Maria's third amended petition as a whole demonstrates she is suing on her own behalf and not to enforce any right belonging to Laredo Hardware. Maria's claims are based solely on her individual damages, not on any damage suffered by the corporation. Armengol did not owe Maria individually a fiduciary duty in his capacity as officer and director, and Maria has not demonstrated any contract or other special relationship on which a duty can be imposed. Maria is

---

[5] This statute has been codified and is now section 21.552 of the Texas Business Organizations Code. TEX. BUS. ORGS. CODE ANN.§ 21.552 (West 2010).

seeking a forced buyout of her shares, which cannot be characterized as seeking relief on behalf of Laredo Hardware. The derivative claim for breach of fiduciary duty is to make all shareholders whole.

Also, Maria has not identified the harm to Laredo Hardware for which she is seeking redress. Instead, in a post-submission brief she contends she is entitled to seek only individual relief pursuant to section 5.14 of the Business and Corporations Act (now section 21.563 of the Texas Business Organizations Act). Maria misconstrues the statutory provision. Section 21.563 provides that a derivative proceeding brought by a shareholder of a closely held corporation "may be treated by a court as a direct action brought by the shareholder for the shareholder's own benefit" if "justice requires." TEX. BUS. ORGS. CODE ANN. § 21.563 (West 2010). However, the statute does not allow a shareholder an individual claim. "Although the court may treat a derivative action as a direct action by a shareholder, the claims remain vested in the corporation." *2055 Incorporated v. McTague*, No. 05-08-01057-CV, 2009 WL 2506342, at *8 (Tex. App.—Dallas Aug. 18, 2009, no pet.) (mem. op.); *see also Swank v. Cunningham*, 258 S.W.3d 647, 665 (Tex. App.—Eastland 2008, pet. denied). Section 21.563 does not allow a shareholder to recover for individual damages.

Maria's claims against Armengol for breach of his officer's and director's fiduciary duty fail. Armengol did not owe Maria, individually, any duty and she has no standing to recover for her personal damages. Although claiming she filed a derivative shareholder suit, Maria seeks no damages or relief on behalf of all shareholders.

### *Shareholder oppression*

Maria alleged Armengol, as the majority shareholder, engaged in shareholder oppression because he used Laredo Hardware for his personal gain. The question of whether a party's acts

are oppressive is a question of law; the only questions of fact are what acts occurred. *Ritchie v. Rupe*, 339 S.W.3d 275, 289 (Tex. App.—Dallas 2011, pet. filed); *Willis v. Bydalek*, 997 S.W.2d 798, 801 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *Davis v. Sheerin*, 754 S.W.2d 375, 380 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

Texas appellate courts recognize an individual cause of action for shareholder oppression and define oppressive conduct as follows:

> 1. Majority shareholders' conduct that substantially defeats the minority's expectations that, objectively viewed, were both reasonable under the circumstances and central to the minority shareholder's decision to join the venture; or

> 2. burdensome, harsh, or wrongful conduct; a lack of probity and fair dealing in the company's affairs to the prejudice of some members; or a visible departure from the standards of fair dealing and a violation of fair play on which each shareholder is entitled to rely.

*Ritchie*, 339 S.W.3d at 289 (quoting *Willis*, 997 S.W.2d at 801). "Courts must exercise caution in determining what shows oppressive conduct." *Willis*, 997 S.W.2d at 801. The minority shareholders' interests must be weighed against the corporation's need to exercise its business judgment. *Id*.

The first part of the definition relates to shareholders' expectations when investing in the corporation. *Ritchie*, 339 S.W.3d at 290-91 (citing Douglas K. Moll, *Shareholder Oppression & Reasonable Expectations: Of Change, Gifts, and Inheritances in Close Corporation Disputes*, 86 Minn. L. Rev. 717, 765–77 (2002)). Maria received all of her shares as gifts or as a bequest from her father. Therefore, there is no evidence of shareholder oppression under this prong.

The second part of the definition focuses on majority shareholders' and controlling officers' conduct. *Id.* at 294. In *Redmon v. Griffith*, the court found that if true the allegations of malicious suppression of dividends, using corporate funds for personal purposes, and "'squeeze-out' techniques such as diverting corporate opportunities, excessive payment of dividends . . .

and attempts to deprive the [plaintiffs] of the fair value of their shares and of the benefits thereof" would constitute shareholder oppression. 202 S.W.3d 225, 235 (Tex. App.—Tyler 2006, pet. denied).

Maria asserts that Armengol engaged in shareholder oppression by usurping Laredo Hardware's corporate opportunity to purchase the property where the company is located, self-dealing by entering into a lease agreement with Laredo Hardware after purchasing the land, and deciding "to destroy Laredo Hardware's cash reserves for his own benefit" instead of liquidating the company. Although diverting a corporate opportunity may in some circumstances constitute shareholder oppression, Maria failed to present any evidence to raise a fact issue on whether Armengol usurped a corporate opportunity.

A majority shareholder or corporate officer takes a corporate opportunity where a corporation has a legitimate interest or expectancy in, and the financial resources to take advantage of, a particular business opportunity. *Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.*, 779 S.W.2d 474, 477 (Tex. App.—El Paso 1989, writ denied). Armengol testified Kansas City Southern Railroad Company, the prior owner of the property where Laredo Hardware is located, approached him regarding purchasing the property. The lease with the railroad company began in 1961 as a 20 year lease for $9000 a year. There was a second lease that ended in 2005. From 2005 to 2007, Laredo Hardware went on a month-to-month tenancy. Armengol testified the board met and decided the property should not be bought by Laredo Hardware because the board did not want to saddle the corporation with the debt. The board meeting minutes demonstrate that the board considered whether to purchase the property and decided it was not in Laredo Hardware's best interest. The minutes reflect that due to concerns related to potential liability for environmental issues, the decrease in working capital, and the

fact the shareholders would have to take the liability and financial risk, it was not in the company's best interest to buy the land.

The fact Armengol entered into a lease with Laredo Hardware also does not raise a fact issue of harsh, or wrongful conduct, not dealing fairly with the company to the prejudice of some members, or a visible departure from the standards of fair dealing and a violation of fair play on which each shareholder is entitled to rely. Maria complains that the lease with Armengol raised the rent from $750 a month under the lease with the railroad to $3,300 per month for 2008 and $3,500 for 2009. Maria argues this was done through negotiations with himself, without going to the board for approval. However, the record demonstrates the board considered the lease agreement with Armengol during a board meeting and the board agreed to enter the lease. Armengol's acts were not oppressive.

The trial court's judgment in favor of Armengol on all of Maria's claims, except the partition claim, is affirmed. We reverse the judgment on the partition claim and remand that claim to the trial court for further proceedings.


Steven C. Hilbig, Justice